RECEIVED
IN LAKE CHARLES, LA

MAR 24 2011
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF LOUISIANA | : | DOCKET NO. 2:10 CV1556 |
| VS. | : | JUDGE MINALDI |
| CONOCOPHILLIPS COMPANY and SASOL NORTH AMERICA INC. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the Court is the United States' Unopposed Motion to Enter Consent Decree [Doc. 3]. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The United States, through the United States Environmental Protection Agency ("EPA"), the United States Department of Interior, acting through the United States Fish and Wildlife Service ("DOI/USFWS"), the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration ("NOAA"), and the State of Louisiana ("the State"), through the Louisiana Department of Wildlife and Fisheries ("LDWF") and the Louisiana Department of Environment Quality ("LDEQ") seeks entry of two proposed Consent Decrees that resolve each of the claims involved in this litigation.[1]

On October 12, 2010, the United States and the State filed a Complaint against the defendants, ConocoPhillips Company and Sasol North America Inc., and lodged the proposed consent decrees in the Federal Register on October 19, 2010. *See* 75 Fed. Reg. 64352. In the Complaint, the United States and the State alleged that the defendants, or their legal predecessors in interest, discharged and disposed of hazardous substances from their refining and

---
[1] Motion for Consent Decree 1-2 [Doc. 3]

1

petrochemical facilities located in Westlake, Louisiana into Bayou Verdine. Those hazardous substances have allegedly caused the incurrence of response costs by the United States and injury to, destruction of, or loss of natural resources within the Calcasieu Estuary. The plaintiffs sought (1) reimbursement, as well as accrued interest, of costs incurred by the United States for response actions at the Calcasieu Estuary Superfund Site ("the Site") in Calcasieu Parish, Louisiana, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 & 9607; (2) performance of response actions on part of the defendants at the Bayou Verdine Area of Concern consistent with the National Contingency Plan ("NCP"), 40 C.F.R. § 300; and (3) recovery of Natural Resource Damages for the injury to, destruction of, or loss of natural resources pursuant to Section 311(f) of the Clean Water Act, under the trusteeship of the federal and state natural resource trustee agencies ("the Trustees"), *see* 42 U.S.C. § 1321(f), and state law, *see* La. Rev. Stat. Ann. § 30:2025.[2]

The parties' have negotiated an agreement that establishes a comprehensive program of compliance and resolves the claims in the complaint. The agreement consists of two Consent Decrees. The first is a Consent Decree for Removal Action and Recovery of Response Costs. The Second is a Consent Decree for Natural Resource Damages. Under the former decree, the defendants have agreed to (1) reimburse the United States $4,553,547 of past response costs for the Site and 100% of future oversight costs related to the selected removal action for Bayou Verdine, and (2) perform a non-time critical removal action within Bayou Verdine and adjacent areas at the Site In accordance with the Action Memorandum executed by the EPA on August 6, 2003.[3]

---

[2] *See* Compl. ¶¶ 6-8, 9-11, 12 [Doc. 1].

[3] *See* Propose Consent Decree [Doc. 1-3]

2

Under the latter decree, the defendants have agreed to (1) reimburse the federal and state trustees nearly $1,200,000 of past natural resource damages assessment costs, (2) perform construction of a restoration project selected collectively by the Trustees in accordance with the Final Restoration Plan and Environmental Assessment for the Bayou Verdine ("the Plan"), and (3) pay an additional sum of $750,000 toward further monitoring or corrective action after completion of the construction of the restoration project.[4]

Upon lodging of the Consent Decrees, the United States solicited public comment on the proposed decrees for thirty days from the date of publication, which expired on November 18, 2010. In response, the United States received one comment. The commenter expressed dissatisfaction with the "fines and penalties" levied against, and more specifically, the valuation the Trustees placed on the natural resources. The commenter explained that "one bird is worth one million dollars and the value of that bird to the ecology is accurate at that figure."[5]

Although not part of the public comment process, the United States also held a telephone conference on January 19, 2011 with Advocates for Environmental Human Rights, a public interest group. The group questioned aspects of the EPA's Removal Action remedy, the same Removal Action apparently published in 2003, which received no public comments at that time. One individual further questioned whether the sediments would be dredged and removed to a sufficient depth. After reviewing the depth of contamination of the settlement, the United States and the State assure this Court that the Removal Action provides for the appropriate excavation of sediments.[6]

---

[4] *See* Proposed Consent Decree [Doc. 1-4].

[5] Motion for Consent Decree 10-11, Ex. A, Public Comment [Doc. 3-1].

[6] Motion for Consent Decree 11 [Doc. 3-1].

Pursuant to State law, the State published notice of the Consent Decrees in a local newspaper, the Lake Charles American Press, on October 28, 2010. For 45 days, the State solicited public comment through the published notice, but the State did not receive public comment on the proposed settlements.[7]

Having considered the comments, the United States and the State continue to believe that the Consent Decrees are fair, reasonable, and in the public interest

## STANDARD OF REVIEW

This Court must review the consent decrees to assure that they are "reasonable, fair, and consistent with the purpose of the statute under which the action is brought." *United States v. City of Miami*, 664 F. 2d 435, 441 (5th Cir. 1980) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997)); *see also Local 93, Int'l Ass'n of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 525 (1986) (reviewing court must ensure a consent decree furthers the objectives upon which the complaint was based before entering a consent decree). The underlying purpose of this review is to determine whether the decree adequately protects the public interest. *See City of Miami*, 664 F.2d at 441.

A consent decree must be the product of "good faith, arms-length negotiations" and will not be approved where the agreement is illegal, a product of collusion, inequitable, or contrary to the public good. *See United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). "The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy." *City of Miami*, 664 F.2d at 441, n. 13. A reviewing court must keep in mind the strong policy favoring voluntary settlement of litigation. *See Ho v. Martine Marietta Corp.*, 845 F.3d 545, 547 n. 2 (5th Cir. 1988); *Metro. Housing Dev.*

---

[7] Motion for Consent Decree 11 [Doc. 3-1].

4

*Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980). "Although this Court accords deference to the government agency which has negotiated and submitted a proposed decree, this court must avoid any rubberstamp approval in favor of an independent evaluation." *United States v. BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1050 (N.D. Ind. 2001). However, "this Court must not substitute its judgment for that of the parties nor conduct the type of detailed investigation required if the parties were actually trying the case." *id.*

## ANALYSIS

Upon review of the Complaint and the proposed Consent Decrees, this Court finds the decrees are both procedurally and substantively fair. The decrees are procedurally fair because the parties have engaged in an arms-length negotiation by experienced counsel. The parties have worked cooperatively to assess the injury and determine restoration alternatives in light of the evidence and potential litigation risks to the parties. *See United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018-20 (8th Cir. 2002).

The consent decree is likewise substantively fair. Although the extent of harm cannot be completely and accurately identified, as in many CERCLA cases, the consent decrees are nevertheless fair based on the best available evidence. The decrees represent an accurate and reasonable remedy by requiring the defendants to perform the restoration project as selected by the Trustees to address injury caused by the defendants' alleged pollution. The defendants have also agreed to pay a substantial portion of the governments' past response costs for the Site and past assessment costs. The consent decrees are also consistent with federal and state law. They require the defendants to remedy past damages and undertake a restoration project to compensate for injuries to natural resources. Collectively, the decrees represent an appropriate settlement to remedy environmental damages to the Site, Bayou Verdine, and the neighboring environment.

6

*See id.*; *United States v. Union Elec. Co.*, 934 F. Supp. 324, 331 (E.D. Mo. 1996), *aff'd* 132 F.3d 442 (8th Cir. 1997). According, it is

ORDERD that the plaintiffs' Motion to Enter the Proposed Consent Decrees is hereby GRANTED.

Lake Charles, Louisiana, this 23 day of March 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

6