

RECEIVED
IN LAKE CHARLES, LA

APR 2 0 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

UNITED STATES OF AMERICA
and STATE OF LOUISIANA

           Plaintiffs,

      v.

CONOCOPHILLIPS COMPANY
and SASOL NORTH AMERICA
INC.,
         Settling Defendants.

CIVIL ACTION NO. 10-1556

JUDGE        MINALDI

MAGISTRATE JUDGE   KAY

## CONSENT DECREE FOR NATURAL RESOURCE DAMAGES

This Consent Decree is made and entered into by and among Plaintiffs, the United States of America ("United States"), on behalf of the United States Department of the Interior, acting through the United States Fish and Wildlife Service ("DOI/USFWS"), and the National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce, and the Louisiana Department of Wildlife and Fisheries ("LDWF") and the Louisiana Department of Environmental Quality ("LDEQ") for the State of Louisiana (State), and Settling Defendants ConocoPhillips Company and Sasol North America Inc. (collectively the "Settling Defendants").

1

# I. BACKGROUND

A.      Contemporaneously with the lodging of this Consent Decree, the United States,

on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"),

NOAA, and the DOI/USFWS, and LDEQ and LDWF have filed a Complaint in this matter

against Settling Defendants pursuant to Sections 106 and 107 of the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606

and 9607, Section 311(f) of the Federal Water Pollution Control Act (also known as the Clean

Water Act or CWA),  33 U.S.C. § 1321 (f), and state law.  Claims made by the State of

Louisiana also include a claim under the Louisiana Environmental Quality Act, La. R.S. §

30:2025.

B.      In the Complaint, the United States and the State seek, *inter alia,* (1)

reimbursement of costs incurred by the United States for response actions at the Calcasieu

Estuary Superfund Site in Calcasieu Parish, Louisiana (hereinafter the "Site" or the "Calcasieu

Estuary Site"), together with accrued interest; (2) performance of response actions at the Bayou

Verdine Area of Concern ("BVAOC")[1] by Settling Defendants consistent with the National

Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"); and (3) recovery of Natural

Resource Damages for the injury to, destruction of or loss of natural resources pursuant to

Section 311(f) of the CWA, 42 U.S.C. § 1321(f), under the trusteeship of the federal and state

---

[1]  The Bayou Verdine Area of Concern ("BVAOC") is that area defined or considered by EPA for
purposes of response investigations and actions.  See definition at Section I, Paragraph H of Consent
Decree for Removal Action  and Recovery of Response Costs filed contemporaneously herewith.

natural resource trustee agencies which include NOAA, the DOI/USFWS, LDEQ and LDWF.  The State also asserts claims against Settling Defendants under Louisiana law.

C.      In the Complaint, the United States and the State assert, *inter alia*, that Settling Defendants, or their legal predecessors in interest, discharged and disposed of hazardous substances into Bayou Verdine from their refining and petrochemical facilities and that such hazardous substances were released into the environment and have caused the incurrence of response costs by the United States and injury to, destruction of, or loss of natural resources within the Calcasieu Estuary.

D.      On March 31, 1999, EPA commenced a Remedial Investigation (RI) for portions of the Site, including for areas of the Calcasieu River in the upper Estuary, pursuant to 40 C.F.R. § 300.430.  Concurrent with EPA's RI, the Settling Defendants performed additional, supplementary investigations and assessments of the conditions in the BVAOC.  These investigations are reported in: *Calcasieu Estuary Remedial Investigation/ Feasibility Study (RI/FS): Baseline Ecological Risk Assessment (BERA)*, EPA 2003; *Bayou Verdine Investigation, Volume I: Nature and Extent Investigation (Entrix*, October 1999), *Bayou Verdine Investigation, Volume II: Screening Level Ecological Risk Assessment* (Entrix, November 1999), *Bayou Verdine Investigation, Volume III: Baseline Ecological Risk Assessment* (Entrix, March 2001) and *Bayou Verdine Investigation, Volume IV: Baseline Human Health Risk Assessment* (Entrix, April 2001).  Collectively, these investigations found the following hazardous substances, among others, in the sediments of Bayou Verdine and areas within Coon Island Loop, an adjacent portion of the Calcasieu River: arsenic, polynuclear-aromatic hydrocarbon ("PAH") compounds, zinc, copper, and chromium.  These investigations found the following hazardous substances,

3

among others, in the surface waters of Bayou Verdine and Coon Island Loop: 1,1,2-trichloroethane, 1,2-dichloroethane ("EDC"), vinyl chloride, and zinc.  The investigations found the following hazardous substances, among others, in biota in Bayou Verdine and Coon Island Loop: arsenic, EDC, PAH compounds, mercury, and zinc.

        E.       Based on data compiled from EPA's and the Settling Defendants' investigations and pursuant to a negotiated Administrative Order on Consent ("AOC") dated February 15, 2002,  Settling Defendants conducted an Engineering Evaluation and Cost Analysis ("EE/CA") for the BVAOC.

        F.       Following the issuance of the AOC for the EE/CA,  elevated concentrations of EDC were further delineated in the sediments of the West Ditch Area of Bayou Verdine. Pursuant to a subsequently negotiated AOC for Removal Action dated October 22, 2002 (the "West Ditch AOC"), the Settling Defendants agreed to perform a time-critical removal action at the West Ditch Area to remove the sediment containing the elevated EDC concentrations.  This action was completed in February 2004.

        G.       EPA also determined the need to perform a Non-Time Critical Removal Action in the Main Channel of the BVAOC.  This EPA decision is embodied in an Action Memorandum executed on August 6, 2003, and is to be performed by Settling Defendants, under EPA oversight, in accordance with the Consent Decree for Removal Action  and Recovery of Response Costs lodged contemporaneously herewith.  LDEQ has concurred in this decision.  The Non-Time Critical Removal Action includes, *inter alia,* removal of contaminated sediments in discrete areas of the BVAOC, upland on-site containment of the removed sediments, and monitored natural recovery.

H.      NOAA, DOI/USFWS, LDWF and LDEQ, (collectively, "the Trustees") have each been designated a natural resource trustee pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f); Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321; LAC 43:XXIX.109.A and Subpart G of the National Contingency Plan ("NCP"), 40 C.F.R. §§ 300.600 - 300.615 and, under these authorities, act on behalf of the public to seek damages for the injury to, destruction of, or loss of natural resources resulting from releases of hazardous substances into the environment.

I.      Using the data provided by EPA's RI for the Calcasieu Estuary Site and by the Settling Defendants' additional investigations of the BVAOC, the Trustees implemented a natural resource damage assessment ("NRDA") to evaluate the injury, loss or destruction of natural resources and resource services within the Calcasieu Estuary due to releases of hazardous substances at or from the Settling Defendants' facilities, including, but not limited to, resource injuries resulting from the removal actions performed in the West Ditch Area and to be performed in the Main Channel of the BVAOC.

J.      During the NRDA process, the Trustees also consulted and coordinated with the Louisiana Department of Natural Resources (LDNR), another designated natural resource trustee in Louisiana, to ensure that there were no potential impacts to trust resources in Louisiana's defined coastal zone due to hazardous substance releases within the scope of the assessment.

K.      The Settling Defendants cooperated with the Trustees in the NRDA process pursuant to 43 C.F.R. § 11.32(a)(2)(iii).

L.      The Trustees' assessment of injuries to natural resources, including interim ecological service losses, and the restoration plan developed to compensate for those losses are

described in the Final Damage Assessment and Restoration Plan and Environmental Assessment for the Bayou Verdine Site ("Final DARP"). The assessment and restoration plan finalized by the Trustees selects a particular restoration project - the Sabine Unit 1999 Restoration Project - to compensate for the natural resources losses attributable to Settling Defendants' releases of hazardous substances into the Calcasieu Estuary. The Project will create over 14 new acres of marsh, enhance the ecological functioning of approximately 247 acres of existing marsh, and increase the expected functional lifespan of these marshes. It is to be performed in the Calcasieu Estuary at a designated site within the Sabine National Wildlife Refuge.

M.     During development of the Final DARP, the Trustees provided opportunities for public participation, including through a formal public review and comment period on the proposed assessment and restoration plan, in accordance with 43 C.F.R. §§ 11.32 and 11.81, 42 U.S.C. §§ 9607(f) and 9611(I), and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*; 74 Fed. Reg. 13193 (March 26, 2009); Lake Charles American Press, March 27, 2009.

N.     Each Trustee has incurred costs in connection with carrying out this NRDA process.

O.     This Consent Decree provides the terms under which Settling Defendants shall, subject to oversight by the Trustees, implement the Sabine Unit 1999 Restoration Project, as described herein, and provides for payments by Settling Defendants of Past Assessment Costs and Future Costs of the Trustees.

P.     The Settling Defendants that have entered into this Consent Decree do not admit

any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that any release or threatened release of hazardous substances at or from their facilities caused Natural Resource Damages.  The Settling Defendants do not admit and retain the right to controvert any of the factual or legal statements or determinations made herein in any judicial or administrative proceeding except in an action to enforce this Consent Decree.

Q.    The United States, the State, and Settling Defendants recognize, and this Court finds, that the Parties have negotiated this Consent Decree in good faith, that implementation of this Consent Decree will expedite the restoration of natural resources and avoid lengthy and protracted litigation, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and Section 311(e)(2) of the CWA, 33 U.S.C. § 1321(e)(2). This Court also has personal jurisdiction over the Settling Defendants.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).  Solely for the purpose of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling

Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States, the State and upon  the Settling Defendants and their respective successors and assigns.  Settling Defendants shall provide a copy of this Consent Decree to any successor-in-interest.  Any change in ownership or corporate status of either Defendant, including any transfer of assets or real or personal property, shall in no way alter Settling Defendants' responsibilities under this Consent Decree.

## IV.  DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the CERCLA and the CWA, and in regulations promulgated under CERCLA and the CWA, including 43 C.F.R. § 11.14, shall have the meanings assigned to them in such statutes and regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"CWA" shall mean the Clean Water Act or Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 *et seq.*

8

"Calcasieu Estuary Superfund Site" shall mean the aerial extent of contamination within the areas encompassing Bayou Verdine, Bayou d' Inde, Coon Island Loop, Clooney Island Loop, Prien Lake, Lake Charles, and the Calcasieu River from the saltwater barrier to Moss Lake, as depicted generally on the map attached as Appendix C.   Within these areas, the Calcasieu Estuary Site includes the surface water, tributaries, biota, sediment, soils, adjoining shoreline and banks, riparian habitats, and related wetlands, as depicted generally on the map attached as Appendix C.   As a clarification, the Calcasieu Estuary Superfund Site does not include any area of the Community of Mossville which is situated outside the approximate limits of the Site as generally depicted on Appendix C.

"Consent Decree" means this Consent Decree and all appendices attached hereto. In the event of a conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a business or working day.  "Business or working day" shall mean a day other than a Saturday, Sunday, or Federal or State of Louisiana State holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal or State of Louisiana holiday, the period shall run until the close of business of the next business or working day.

"Date of Lodging" means the date this Consent Decree is lodged with the Clerk of Court.

"Effective Date" means the effective date of this Consent Decree as provided by Section XIX of this Consent Decree (Effective Date and Retention of Jurisdiction).

"Federal Trustees" means NOAA and the DOI/USFWS.

"Future Costs" is the liquidated sum of $750,000 that Defendants shall pay to the Trustees, in accordance with the provisions set forth herein, in full satisfaction of Defendants' liability for future administrative costs and other expenses that will be incurred by the Trustees

9

for overseeing construction of the Restoration Project, for monitoring and assessing performance of the Restoration Project, and for performing corrective or other restoration actions.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Lead Administrative Trustee" means the representative of the Trustees designated under Paragraph 10 of Section VI (Compensation for Natural Resource Injuries).

"Natural Resource Damages" means compensatory relief or damages, including the reasonable costs of assessing such damages, that are recoverable pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), or Section 311(f) of the CWA, 33 U.S.C. § 1321(f), or 43 C.F.R. § 11.15, La. R.S. 30:2454 (5)(a) and (17), and LAC 43:XXIX.109.A, and state or federal common law, by the Trustees on behalf of the public for injury to, destruction of, loss of, or loss of use of the natural resources or resource services belonging to, managed by, controlled by or appertaining to the United States, the State, or any local government resulting from past disposals or discharges of hazardous substances that resulted in the release of hazardous substances at or from the Site, the response actions previously conducted at the Site, and the response actions to be implemented under the Consent Decree for Removal Action and Recovery of Response Costs filed contemporaneously herewith.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Party" or "Parties" means the United States on behalf of the Federal Trustees, and the State, individually and collectively, and Settling Defendants ConocoPhillips Company and Sasol North America Inc, individually, and the United States, the State, and Settling Defendants, collectively, as indicated by the context.

"Past Assessment Costs" means the reasonable costs of the natural resource damage assessment for the Site incurred by NOAA, by DOI/USFWS, by LDEQ, by LDWF, and by LDNR prior to the lodging of this Decree that are recoverable from Settling Defendants pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607 (a)(4)(C) and 43 C.F.R. § 11.15(a)(3).

"Plaintiffs" means the United States, representing NOAA and the DOI/USFWS, and LDEQ and LDWF for the State of Louisiana.

"Restoration Project Manager" means the person designated by Settling Defendants pursuant to Paragraph 8  to supervise and direct the implementation of the Restoration Project in conformance with the terms of this Consent Decree.

"Restoration Implementation Plan" means the document, attached to this Consent Decree as Appendix A, providing for the implementation of the Sabine Unit 1999 Restoration Project, including any modifications to that plan authorized in accordance with the Consent Decree.

"Restoration Project Site" or "Project Site" means the particular location within the Sabine National Wildlife Refuge known as the Unit 1999 Site, at which construction of the Restoration Project identified in this Consent Decree will be completed by Settling Defendants.

11

"Restoration Project" means all actions and work required to implement and complete the Sabine Unit 1999 Restoration Project under this Consent Decree, including levee degradation, levee gapping, dredging, filling and/or grading for marsh creation, record keeping, and reporting, as described in the Restoration Implementation Plan attached as Appendix A.

"Sabine Unit 1999 Restoration Project" means the Restoration Project as defined, described, and scheduled in Appendix A to this Consent Decree.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean ConocoPhillips Company and Sasol North America Inc., and shall include their predecessors, successors and assigns only to the extent the liability of such predecessor, successor or assign arises out of the same activities relating to the Site that gave rise to the alleged liability of their respective Settling Defendant that forms the basis for the claims in the Complaint against Settling Defendants.

"Site" means the Calcasieu Estuary Superfund Site.

"State" means LDEQ, LDWF and LDNR for the State of Louisiana, and its political subdivisions, departments and agencies.

"State Trustees" means LDEQ and LDWF.

"Trustees" means the Federal Trustees and the State Trustees collectively.

"Trustee Council" or "Council" means the Trustee representatives designated by NOAA, the DOI/USFWS, LDEQ and LDWF, pursuant to Paragraph 9 of this Decree, to act on behalf of the Trustees, and by consensus, on all matters related to the Restoration Project under the terms of this Consent Decree.

"United States" means the United States of America.

## V. <u>GENERAL PROVISIONS</u>

4.      <u>Objectives of the Parties</u>:  The objectives of the Parties in entering into this Consent Decree are (I) to restore natural resources and resource services that will fully compensate the public for the injury to, loss of, or destruction of natural resources and resource services attributable to past releases of hazardous substances at or from the Settling Defendants' facilities into the Calcasieu Estuary, including those losses due to the response actions that have been and are to be undertaken to protect public health and welfare and the environment; (ii) to provide for payments to each Trustee of Past Assessment Costs by these Settling Defendants; (iii) to provide for the payment of Future Costs consistent with the terms of this Consent Decree, and (iv) to resolve the Plaintiffs' claims for Natural Resource Damages against these Settling Defendants.

5.      <u>Responsibility for Compliance</u>.  Settling Defendants are and shall be solely responsible for compliance with all terms of this Consent Decree.  All work undertaken by Settling Defendants in order to implement the Restoration Project described in this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state, and local laws and regulations.  This Consent Decree is not a permit and where any portion of the Restoration Project requires a federal, state, or local permit or approval, Settling Defendants shall submit a timely and complete application and take all other actions necessary to obtain all such permits and/or approvals.  The obligations of Settling Defendants to implement the requirements of this Consent Decree, including completion of the Restoration Project and

payment of Trustees' Past Assessment Costs and Future Costs are joint and several.  However, any actions taken by one of the Settling Defendants in satisfaction of the obligations specified in this Consent Decree shall be deemed to be an action jointly taken by both Settling Defendants. In the event of the insolvency or other failure of any one Defendant to implement the requirements of this Consent Decree, the remaining Defendant shall complete all such requirements.

      6.     Use of Contractors by  Settling Defendants.

      a.  Settling Defendants shall notify the Trustee Council, in writing, of the name, address and telephone number of any contractors and subcontractors hired to perform  any work or activity involved in implementing any portion of  the Restoration Project.   Settling Defendants may subsequently change any contractors or subcontractors but must  provide written notice to the Trustees at least 30 days prior to the change.

      b.  Settling Defendants shall provide a copy of this Consent Decree to their Restoration Project Manager(s), as identified pursuant to Paragraph 8 of Section VI  herein, and to each contractor hired to perform any work or activity involved in implementing any portion of the Restoration Project, as described and required by this Consent Decree and, further, shall include a requirement of conformity with the pertinent terms of this Consent Decree in all contracts for the performance of any work involved in implementing the Restoration Project. The  Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to implement any portion of the Restoration Project.  Each contractor and subcontractor implementing the Restoration Project shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA,

42 U.S.C. § 9607(b)(3).  Notwithstanding the above requirements,  Settling Defendants shall remain fully responsible for ensuring that its contractors and subcontractors perform all work and activities involved in implementing the Restoration Project identified  herein in accordance with this Consent Decree.

## VI. COMPENSATION FOR NATURAL RESOURCE INJURIES

7.   <u>Implementation of the Sabine Unit 1999 Restoration Project</u>.  The Settling Defendants shall fund, perform, and complete all work and other activities required to implement the Sabine Unit 1999 Restoration Project, in accordance with the Restoration Implementation Plan (Appendix A, all provisions of which are incorporated in and enforceable under this Consent Decree),  in conformance with the procedures, schedules and terms set forth in this Consent Decree and in compliance with all applicable laws and permits.

8.   <u>Settling Defendants' Restoration Project Manager</u>.  Not later than 30 days after the Effective Date of this Consent Decree, Settling Defendants shall notify the Trustees, in writing, of the name, address and telephone numbers of their jointly designated restoration project manager for the Restoration Project  ("Restoration Project Manager").  The person so designated shall have technical expertise sufficient to adequately manage implementation of all aspects of implementation of the Restoration Project and will be responsible for supervising and directing all activities necessary to implement the Restoration Project in conformance with the terms of this Decree.  The Settling Defendants may subsequently change their designated Project Manager but must provide written notice to the Trustees at least 30 days prior to the change. The Restoration Project Manager shall serve as the Trustee Council's point-of-contact with the

15

Settling Defendants and coordinate the Settling Defendants' activities in implementing the Restoration Project in accordance with this Consent Decree.

9.     <u>Trustee Council</u>.  The Trustees shall oversee implementation of the Restoration Project by the Settling Defendants.  Such oversight shall be effected through a Trustee Council, consisting of one representative designated each by NOAA, the DOI/USFWS, LDEQ and LDWF.  The name, address and telephone number of each Trustee representative on this Council will be provided to Settling Defendants no later than 30 days after the Effective Date of this Consent Decree.  This Council shall act on behalf of the Trustees, and by consensus, on all matters related to the Restoration Project under the terms of this Consent Decree, including, but not be limited to:

a.     reviewing and approving all additional work plans and specifications for use in constructing the Restoration Project;

b.     overseeing construction of the Restoration Project, pursuant to the Restoration Implementation Plan;

c.     providing the Settling Defendants with a "Construction Completion Certificate", after all criteria for such certification has been met; and

d.     performing duties associated with the dispute resolution process, whenever necessary, as described in this Consent Decree.

10.     <u>Lead Administrative Trustee</u>.  No later than 60 days after the Effective Date of this Consent Decree, the Trustee Council will identify a Lead Administrative Trustee ("LAT") to serve as the Settling Defendants' principal point of contact for coordinating with the Trustee Council under the procedures for the Trustees' oversight of the Restoration Project described in

16

this Section and the Restoration Implementation Plan. The Trustee Council may change the Lead Administrative Trustee at any time by providing written notice to Settling Defendants.

11.     The Settling Defendants shall be deemed to have satisfactorily performed their obligation(s) to implement the Restoration Project under this Decree upon issuance of a Construction Completion Certificate by the Trustee Council pursuant to the Restoration Implementation Plan, or upon a final determination under Section X (Dispute Resolution) that no further actions are required to be undertaken by Settling Defendants to complete the Restoration Project.

12.     <u>Access.</u>

a. The DOI/USFWS and the Settling Defendants have entered into a Special Use Permit providing for the Settling Defendants' access to and use of the Sabine National Wildlife Refuge in order to implement the Restoration Project. This Permit is attached to this Consent Decree as Appendix E. Settling Defendants will renew the Permit annually, as required, to complete the Restoration Project.

b. The Parties shall provide to the Trustees and their designated representatives, access at reasonable times to all locations used in implementing the Restoration Project, including to all areas of the Restoration Project Site as well as all vessels used by the Settling Defendants, or their contractors, for any purpose relating to the implementation and oversight of the Restoration Project, to future monitoring, or to corrective action pertaining to the Restoration Project, or for the enforcement of this Consent Decree, including but not limited to:

(I) Interviewing the Settling Defendants' personnel involved in field work conducted pursuant to the Restoration Implementation Plan;

(ii) Inspecting records, and/or operating logs related to construction of the Restoration Project;

(iii) Reviewing the progress of the Settling Defendants in implementing the Restoration Project;

(iv) Conducting such sampling, tests or other actions as the Trustees and/or their representatives deem appropriate for implementation and oversight of the Restoration Project, for future monitoring, for corrective action pertaining to the Restoration Project, or for the enforcement of this Consent Decree;

(v) Using a camera, sound recording, or other documentary equipment to make or preserve observations or measurements; and

(vi) Verifying any reports or data that the Settling Defendants submit to the Trustees.

c. Settling Defendants acknowledge the right of the Trustees and their designated representatives to be present at all times that the Settling Defendants, including their contractor(s) or subcontractor(s), are performing any work or activity involved in implementing the Restoration Project.   The Trustees may designate other representatives, including, but not limited to, Federal and State employees, and Federal and State contractors and consultants, to observe, monitor, assess or assist in overseeing the progress of the Restoration Project.

d. The Settling Defendants and/or their representatives may accompany the Trustees and/or their representatives whenever and wherever they are present at the Restoration Project Site but may not delay or impede any access or activities of the Trustees authorized under this Section.   If the Trustees conduct any sampling for the purpose of oversight of the

18

Settling Defendant's implementation of the Restoration Project or enforcement of this Consent Decree, the Trustees will provide, upon timely request, splits of such sample to Settling Defendants' Restoration Project Manager or other designated representative. Further, with respect to any samples taken from the Restoration Project Site for the purpose of oversight of the Settling Defendants' implementation of the Restoration Project or enforcement of this Consent Decree, copies of the results of any analyses or tests on such samples shall be provided to the Trustee Council and the Settling Defendants' Restoration Project Manager regardless of which Party collected the samples and conducted, or paid for, the testing or analyses.

   e. <u>Access to Persons.</u> When requested and upon reasonable notice by the Trustees, the Settling Defendants shall make available to the Trustees, at an appropriate location, any of their employees, agents, or representatives with knowledge of material facts concerning the implementation of the Restoration Project for purposes of investigations, information gathering, or interviews by the Trustees.

## VII. <u>PAYMENT OF PAST ASSESSMENT COSTS AND FUTURE COSTS</u>

  13. Within 30 days of the Effective Date of this Decree, the Settling Defendants shall reimburse the Federal and State Trustees for their past assessment costs as set forth in Paragraphs 14 and 15 below.

  14. <u>Past Assessment Costs Incurred by NOAA and DOI/USFWS</u>. Settling Defendants shall pay the United States' Past Assessment Costs incurred by NOAA and the DOI/USFWS, in the manner and amounts described herein. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT

procedures. Payment shall be made in accordance with instructions provided to the Settling

Defendants by the Financial Litigation Unit of the United States Attorney's Office for the

Western District of Louisiana. Any payments received by the Department of Justice after 4:00

p.m. (Eastern Time) will be credited on the next business day:

      a. FOR DOI: The Settling Defendants shall pay $253,622.45 to reimburse Past

Assessment Costs incurred by DOI, referencing "DOJ Case Number 90-11-2-1284/1, USAO File

Number _____ [to be provided upon filing of Complaint] and Account Number 14X5198

(NRDAR), CALCASIEU Bayou Verdine/Coon Island Loop Natural Resource Damages

Settlement, Louisiana." The Settling Defendants shall also send notice that such payment has

been made to the DOJ and DOI persons listed in Section XVI (Notice), as well as to:

> U.S. Department of the Interior
> Natural Resource Damage Assessment and Restoration Program
> Attention: Restoration Fund Manager
> 1849 C Street, NW
> Mail Stop 4449
> Washington, DC 20240; and

      b. FOR NOAA: The Settling Defendants shall pay $890,717.90 to reimburse

Past Assessment Costs incurred by NOAA, referencing "DOJ Case Number 90-11-2-1284/1,

USAO File Number _____ [to be provided upon filing of Complaint] and CALCASIEU Bayou

Verdine/Coon Island Loop Natural Resource Damages Settlement, Louisiana -NOAA's

DARRF." The Settling Defendants shall also send notice that such payment has been made to

the DOJ and NOAA persons listed in Section XVI (Notice), as well as to:

> NOAA/NOS/OR&R
> ATTN: Kathy Salter, DARRF Manager
> 1305 East West Highway
> SSMC4, Room 9331
> Silver Spring, MD 20910-3281,

15.   <u>Past Assessment Costs Incurred by the State Trustees</u>

     a.   <u>Assessment Costs Incurred by LDEQ</u>.  Settling Defendants shall pay $41,102.98 to LDEQ to reimburse Past Assessment Costs incurred for the Site.  Payment to LDEQ shall be made by certified check payable to the "Louisiana Department of Environmental Quality" and sent to Attn: Chris Piehler, Administrator, Water Quality Assessment Division, PO Box 4314, Baton Rouge LA 70821. Settling Defendants shall provide written notice of this payment to the State and LDEQ in accordance with Section XVI (Notice).

     b.   <u>Assessment Costs Incurred by LDWF</u>.  Settling Defendants shall pay $8,896.88 to LDWF to reimburse Past Assessment Costs incurred for the Site.  Payment to LDWF shall be made by certified check payable to the "Louisiana Department of Wildlife and Fisheries" and sent to Attn: Heather Warner-Finley, Biologist Program Manager - Marine Habitat Program, P.O. Box 98000, Baton Rouge, LA 70898-9000.   Settling Defendants shall provide written notice of this payment to the State and LDWF in accordance with Section XVI (Notice).

     c.   <u>Assessment Costs Incurred by LDNR</u>.   Settling Defendants shall pay $5299.88 to LDNR for costs it incurred in past participation, coordination and consultations with the Trustees as part of the natural resource damage assessment process for the Site.   Payment to LDNR shall be made by certified check payable to the "Louisiana Department of Natural Resources" and sent to Attn:  Robert D. Harper, Undersecretary, Louisiana Department of Natural Resources, P.O. Box 94396, Baton Rouge LA 70804-9396.  Settling Defendants shall provide written notice of this payment to the State and LDNR in accordance with Section XVI (Notice).

16.   Future Costs.   Settling Defendants shall pay the sum of $750,000 to the Trustees in satisfaction of their liability for the Trustees' Future Costs, in the amounts and manner set forth herein.

a. Within 30 days of the Effective Date of this Decree, the Settling Defendants shall pay a total of $82,000, by making the following payments to each Trustee in accordance with payment procedures set forth in Paragraphs 14-15:

(I) $19,030 shall be paid to DOI/USFWS in accordance with Paragraph 14(a);

(ii)  $59,380 shall be paid to NOAA in accordance with Paragraph 14(b);

(iii) $2,270 shall be paid to LDEQ in accordance with Paragraph 15(a); and

(iv) $1,320 shall be paid to LDWF in accordance with Paragraph 15(b).

b.   Within 30 days of the date of issuance of the Construction Completion Certificate by the Trustee Council to the Settling Defendants, the Settling Defendants shall pay $668,000 into DOI's Natural Resource Damage Assessment and Restoration Fund, for deposit and maintenance in a sub-account within that Fund to be known as the Calcasieu/Bayou Verdine Site Restoration Account.  Settling Defendants shall make the payment identified in this Paragraph by EFT through the United States Treasury Department's Automated Clearing House, in accordance with the instructions to be provided to Settling Defendants by DOI no later than the date of issuance of the Construction Completion Certificate.  The addenda record for such transfer shall be annotated "Calcasieu/Bayou Verdine Site Restoration Account".  Settling Defendants shall provide written notice of this payment to all Federal and State parties in accordance with Section XVI (Notice).  The funds paid into the DOI's Natural Resource Damage Assessment and Restoration Fund shall be held in that account for the Federal and State Trustees

and solely for use as agreed by the Trustees to pay Future Costs associated with the Restoration Project.

c. After issuance of the Construction Completion Certificate by the Trustee Council and upon payment of all sums identified in this Paragraph, together with any applicable Interest, Settling Defendants will have no further obligation for any Future Costs or future performance monitoring, corrective action or other restoration relating to the Restoration Project.

17.    Interest on Late Payments.  In the event any payment required by this Section is not made when due, Interest on the unpaid balance shall be paid commencing on the thirty-first (31st) day after the Effective Date of the Decree for Past Assessment Costs and on the thirty-first (31st) day after the due date(s) for payment of Future Costs, accruing through the date of full payment.  Interest payments shall be paid in the same manner as the overdue principal amount, and shall be directed to the same fund or account as the overdue principal amount.  Interest is in addition to any Stipulated Penalties accruing for late payments under Section XI (Stipulated Penalties).

## VIII. **INDEMNIFICATION**

18.    The United States and the State do not assume any liability by entering into this Consent Decree.  The Settling Defendants shall indemnify, save and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, (a) negligent or other wrongful acts or omissions of the Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any person acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree; or (b) any

contract, agreement, or arrangement between the Settling Defendants and any person for performance of any work or activity involved in implementing the Restoration Project including, but not limited to, claims on account of construction delays.  Further, the Settling Defendants agree, individually and collectively, to reimburse the United States and the State for all costs each incurs, including but not limited to attorneys fees, other expenses of litigation and settlement, and costs incurred by the Trustees, as a result of claims made against the United States or the State, based on negligent or other wrongful acts or omissions of the Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of the Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendants nor any of their contractors shall be considered an agent of the United States or the State.

19.    The United States and the State shall give the Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 18 and shall notify the Settling Defendants prior to settling such claim.

20.    The Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State arising from or on account of any contract, agreement, or arrangement between the Settling Defendants and any person for performance of any work or other activity involved in implementing Restoration Project, including, but not limited to, claims on account of construction delays.

24

## IX.  **FORCE MAJEURE**

21.    "Force majeure" for the purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, or their contractor(s), or of any entity controlled by the Settling Defendants or controlling the Settling Defendants, that delays or prevents the performance of any obligation under this Consent Decree, despite the Settling Defendants' best efforts, individually and collectively, to fulfill the obligation.  The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using the best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (1) as it is occurring and (2) following the force majeure, such that the delay is minimized to the greatest extent possible.  "Force majeure" does not include financial inability to (a) make payments required by Section VII (Payment of Past Assessment Costs and Future Costs) or (b) implement the Restoration Project as set forth in the Restoration Implementation Plan.

22.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure, the Settling Defendants shall orally notify the Lead Administrative Trustee within 24 hours of the time that the Settling Defendants first knew that the event might cause a delay.  Within five (5)  days thereafter, the Settling Defendants shall provide in writing to the Trustees a detailed description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay or the effect thereof; a schedule for implementation of any measures to be taken to prevent or mitigate the delay; the Settling Defendants' rationale for

attributing such a delay to a force majeure if they intend to assert such a claim; and state whether, in the opinion of the Settling Defendants, such circumstances may cause or contribute to an endangerment to public health or the environment.  The Settling Defendants shall include with any such notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude the Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  The Settling Defendants shall be deemed to know of any circumstance that was known by, or should have been known by, the Settling Defendants, the  Settling Defendants' contractors, or any entity controlled by the  Settling Defendants or controlling the Settling Defendants.

23.    If the Plaintiffs agree that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by the Plaintiffs for such time as necessary to complete the obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, by itself, extend the time for performance of any other obligation.  If the Plaintiffs agree that the delay is attributable to a force majeure, the Plaintiffs will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.  If the Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a force majeure, the Plaintiffs will notify the Settling Defendants in writing of that decision, together with an explanation of the decision, within forty-five (45) days of receipt of Settling Defendants' written notice  (subject to a 15-day extension of time upon timely notice to the Settling Defendants).

24.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 days after receipt of the Plaintiffs' notice, as described in Paragraph 26.  In any such proceeding, the Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Settling Defendants complied with the requirements of Paragraphs 21 and 22.  If the Settling Defendants carry this burden, the delay at issue shall not be deemed to be a violation by the Settling Defendants of the affected obligation of this Consent Decree identified to the Plaintiffs and the Court.

## X.  DISPUTE RESOLUTION

25.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedure of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree between the Settling Defendants and the Plaintiffs. However, the procedures set forth in this Section shall not apply to actions by the United States or the State to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

26.     Informal Dispute Resolution.  If, in the opinion of either the Trustees or the Settling Defendants, there is a dispute which arises under or with respect to this Consent Decree, that party shall send written notice to the other parties to the dispute outlining the nature of the dispute and requesting negotiations to resolve the dispute.  The Settling Defendants and the

Trustees shall endeavor to resolve the dispute through good faith negotiations.  The period for informal negotiations shall not exceed 60 days from the date the notice is sent, unless this time period is modified by written agreement of the Settling Defendants and the Trustees.

27.    Formal Dispute Resolution.

a.    In the event that the Settling Defendants and the Trustees cannot resolve a dispute by informal negotiations under Paragraph 26, then the position advanced by the Trustees, individually or jointly, shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, the Settling Defendants invoke the formal dispute resolution procedures of this Section by serving the Plaintiffs with a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the  Settling Defendants.

b.    Within 60 days after receipt of  Settling Defendants' Statement of Position, the Plaintiff(s) will serve its/their Statement of Position on Settling Defendants, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the Plaintiff(s).  Within 15 days after receipt of this Statement of Position, Settling Defendants may submit a Reply.

c.    An administrative record of the dispute shall be maintained by the Plaintiff(s) and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, the Plaintiff(s) may allow submission of supplemental statements of position by the parties to the dispute.

d.    The Trustee(s) will issue a final administrative decision resolving the

28

dispute based on the administrative record described in Paragraph 27.c. This decision shall be binding on the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 27.e.

e.     Any final administrative decision made by the Plaintiff(s) under Paragraph 27.d shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of the Plaintiff(s)' final decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The Plaintiff(s) may file a response to the Settling Defendants' motion within thirty (30 ) days of receipt of the Motion or such greater time as the Court allows.

28.     In proceedings on any dispute governed by Paragraph 27, Settling Defendants shall have the burden of demonstrating that the decision of the Plaintiff(s) is either not in accordance with the requirements of this Consent Decree or otherwise not in accordance with applicable law. Judicial review of the decision of the Plaintiff(s) shall be on the administrative record compiled pursuant to Paragraph 27.c.

29.     The invocation of informal or formal dispute resolution procedures pursuant this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree that is not directly in dispute, unless the Plaintiffs agree otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall still accrue from the first day of noncompliance with any applicable

provision of this Consent Decree. The Settling Defendants shall not be required to pay stipulated penalties if and to the extent that they prevail on the disputed issue(s). If the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI (Stipulated Penalties).

## XI. **STIPULATED PENALTIES**

30.     Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 31 to the United States and the State for failure to comply with the requirements of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). "Compliance" by Settling Defendants shall include the timely completion of the payments and activities established by and/or approved pursuant to the requirements of the Consent Decree, including those activities set forth in the Restoration Implementation Plan (Appendix A).

31.     The following stipulated penalties shall accrue per violation per day for the Settling Defendants' failure to comply with the following requirements:

a.     Failure to comply with the construction completion schedule or access requirements, set forth in the Restoration Implementation Plan and this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,000 | 31st day and beyond |

b.     Failure to submit timely or adequate reports [or other written documents] pursuant to the Restoration Implementation Plan and this Consent Decree, or to provide information in

accordance with Access to Information provisions of this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1,000 | 31st day and beyond |

    c.    Failure to make the payments required by Section VII (Payment of Past Assessment Costs and Future Costs) in a timely manner:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,000 | 31st day and beyond |

    32.    All penalties shall begin to accrue on the day after performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue with respect to judicial review by this Court of any dispute under Section X (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

    33.    Following the determination by the federal and/or state Plaintiff(s), individually or jointly, that the Settling Defendants have failed to comply with one of the requirements of this Consent Decree listed above, the Plaintiff(s) may give the Settling

Defendants written notice of same and describe the noncompliance. The Plaintiff(s) may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in this Section regardless of whether Plaintiff(s) have notified the Settling Defendants of a violation.

34.    All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of the Settling Defendants' receipt of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section X (Dispute Resolution). In that case, Stipulated Penalties shall continue to accrue as provided in this Section but need not be paid until the following:

a.    If the dispute is resolved by agreement, accrued penalties agreed to be owed shall be paid to the United States and the State  within 30 days of the agreement;

b.    If the dispute is appealed to this Court and the Plaintiff(s) prevail in whole or in part, the Settling Defendants shall pay all accrued penalties determined by the Court to be owed to the United States and the State within 30 days of receipt of the Court's decision or order.

c.    If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States and the State into the court registry or an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to the United States and the State (as applicable) or to Settling Defendants if and to the extent that they prevail.

35.     Stipulated penalties accruing and owed for Settling Defendants' failure to timely pay the identified Past Assessment Costs or Future Costs will be payable to the appropriate Plaintiff.  Stipulated penalties otherwise accruing and due under this Section shall be paid as follows:

a.      Fifty percent (50%) of any stipulated penalties payments shall be paid to the United States in accordance with payment instructions provided by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Louisiana, and shall be deposited in the United States Treasury.

b.      Twenty-five percent (25%) of any stipulated penalties payments shall be paid to LDEQ, in accordance with the instructions set forth in Paragraph 15.

c.      Twenty-five percent (25%) of any stipulated penalties shall be paid to LDWF, in accordance with the instructions set forth in Paragraph 15.

36.     In the event the Settling Defendants fail to pay stipulated penalties when due, the United States and/or the State, as appropriate, may institute a legal proceeding to collect such penalties, as well as Interest accruing on any unpaid balance, as provided by law.  If Defendant(s) fail to comply with the Decree, Plaintiff(s) shall be entitled to collect the costs (including attorney's fees) incurred in any judicial action to enforce the terms of this Decree.

37.     a. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of a violation of this Consent Decree by Settling Defendants.

b. Notwithstanding any other provision of this Section, the United States and/or the State may, in their unreviewable discretion, waive any portion of stipulated penalties owed to

33

that respective sovereign pursuant to this Consent Decree.

## XII. COVENANTS NOT TO SUE BY PLAINTIFFS

38.     In consideration of the payments to be made by Settling Defendants' under Section VII (Payment of Past Assessment Costs and Future Costs) and the implementation of the Restoration Project by the Settling Defendants in accordance with the terms of this Consent Decree,  and except as specifically provided in Paragraph 39 (Reservations of Rights by Plaintiffs):

        a.  the United States hereby covenants not to sue or take any civil judicial or administrative action against Settling Defendants to recover Natural Resource Damages.  This covenant not to sue shall take effect upon the Effective Date of this Consent Decree.  However, it is expressly conditioned upon the satisfactory performance by Settling Defendants of all of their obligations under this Consent Decree.  This covenant not to sue extends only to Settling Defendants and does not extend to any other person.

        b.  the State hereby covenants not to sue or take any civil judicial or administrative action against Settling Defendants to recover Natural Resource Damages.  This covenant not to sue shall take effect upon the Effective Date of this Consent Decree.  However, it is expressly conditioned upon the satisfactory performance by Settling Defendants of all of their obligations under this Consent Decree.  This covenant not to sue extends only to Settling Defendants and does not extend to any other person.

39.     Reservation of Rights by Plaintiffs.

        a.      Notwithstanding any other provision of this Consent Decree, the United

States and the State reserve the right to institute civil judicial or administrative proceedings as

applicable against Settling Defendants in this action or in a new action, seeking recovery of

additional Natural Resource Damages, if:

      (I)      conditions at the Site previously unknown to the Trustees are discovered;
or

      (ii)      information that previously was unknown to the Trustees is received, in
whole or in part,

and the Trustees determine that these previously unknown conditions or this information,

together with any other relevant information, indicates that there is new or additional injury to,

loss of, or destruction of natural resources, or resource service losses, of a type unknown or of a

magnitude greater than was known by the Trustees that is at least partly attributable to the

Settling Defendants.

      b.      For purposes of subparagraph a, the information and the conditions known

to the Trustees includes only that information and those conditions known to the Trustees as of

the date the Final DARP was made available to the public.

      c.      Nothing in the Consent Decree is intended to be, nor shall be construed as,

a release from liability or a covenant not to sue for any claim or cause of action of the United

States or the State, administrative or judicial for:

      (i)      Settling Defendants' failure to comply with any obligation or requirement
of this Consent Decree;

      (ii)      claims brought on behalf of the United States and the State, including
State and Federal agencies, for costs, damages, and expenses of any sort,

35

other than for Natural Resource Damages, Past Assessment and Future Costs that are the subject of this Consent Decree;

(iii)    liability arising from any past, present, or future releases of hazardous substances other than the releases at or from the Site that are the subject of this Consent Decree;

(iv)    liability arising from any releases of hazardous substances from any site or location that is not the subject of this Consent Decree, including but not limited to, any hazardous substance taken from the Site and disposed of at another site or location;

(v)    liability based upon the Settling Defendants' future ownership or operation of the Site, or upon the Settling Defendants' future transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of hazardous substances at or in connection with the Site other than as provided in the work to be performed under the Consent Decree for Removal Action and Recovery of Response Costs, after signature of this Consent Decree by the Settling Defendants;

(vi)    criminal liability; and

(vii)    liability for violations of federal or state law which occur during or incident to  performance of any work or other activity involved in implementing the  Restoration Project pursuant to this Consent Decree.

### XIII. COVENANTS NOT TO SUE BY SETTLING DEFENDANTS

40.     Except as provided in Paragraphs 41 and 42 and as may be required to enforce its

rights under this Consent Decree (as limited by Section X. Dispute Resolution), Settling

Defendants hereby covenant not to sue and agree not to assert any claims or causes of action

against the United States or the State for any claims arising from or relating to the Restoration

Project or any claims arising from or relating to the Natural Resource Damages resulting from

the release of hazardous substances from the Site, pursuant to any federal, state, or common law,

including, but not limited to any direct or indirect claim for reimbursement for Natural Resource

Damages from the Hazardous Substance Superfund (established pursuant to the Internal Revenue

Code, 26 U.S.C. § 9507) through Sections 107, 111, 112, and 113 of CERCLA, 42 U.S.C. §§

9607, 9611, 9612, and 9613, or any other provision of law.

41.     Settling Defendants' Federal Reservation of Rights.  Settling Defendants reserve,

and this Consent Decree is without prejudice to, claims against the United States, subject to the

provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or

loss of property or personal injury or death caused by the negligent or wrongful act or omission

of any employee of the United States while acting within the scope of his office or employment

under circumstances where the United States, if a private person, would be liable to the claimant

in accordance with the law of the place where the act or omission occurred.  However, any such

claim shall not include a claim for any damages caused, in whole or in part, by the act or

omission of any person, including any contractor, who is not a federal employee as that term is

defined in 28 U.S.C. § 2671.  Nor shall any such claim include a claim based on the Trustees'

selection of the Restoration Project, or, except as permitted in this Consent Decree, their

oversight of the Restoration Project, or their approval of Settling Defendants' plans or activities associated with the Restoration Project. The reservation of rights described in this paragraph applies only to claims that are brought pursuant to a statute other than CERCLA and the CWA and which other statute expressly provides for the waiver of sovereign immunity necessary to permit such claim against the United States.

42.     <u>Settling Defendants' State Reservation of Rights</u>.  Settling Defendants reserve, and  this Consent Decree is without prejudice to, claims against the State, subject to the provisions of the Louisiana Governmental Claims Act, La. R.S. 13:5101 et seq., for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the State while acting within the scope of his office or employment; however, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a state employee; nor shall any such claim include a claim based on the Trustees' selection of the Restoration Project, and, except as permitted in this Consent Decree, their oversight of the Restoration Project, nor their approval of Settling Defendants' plans or activities associated with the Restoration Project.

43.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R.§ 300.700(d).

## XIV.  EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION

44.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including but not limited to any right of contribution against third parties), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to Natural Resource Damages against any person not a Party hereto.

45.     The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendants are entitled, as of the Effective Date of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for Natural Resource Damages as addressed in this Decree.

46.     In any subsequent administrative or judicial proceeding initiated by the Plaintiffs with respect to the Site, Settling Defendants may contest any claims reserved by the United States and the State in this Consent Decree, and the Settling Defendants may claim any defense available to them, except they shall not assert, and may not maintain any defense or claim based on the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or any other defenses based upon the contention that the claims raised by the Plaintiffs in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XII (Covenants Not to Sue by Plaintiffs).

47.     The failure of any of the Plaintiffs to insist upon strict and prompt

performance of any provision of this Consent Decree shall not operate as a waiver of any

requirement of this Consent Decree or of the Plaintiff(s)' right to insist on prompt compliance in

the future with such provision, and shall not prevent a subsequent action by any of the Plaintiffs

to enforce such a provision.


## XV.  ACCESS TO INFORMATION

48.     Until 3 (three) years after the issuance of the Construction Completion Certificate

by the Trustee Council, subject to Paragraphs 49 and 50, and excepting records, documents, and

other information prepared in anticipation of litigation, protected by the attorney-client privilege or

any other privilege recognized by federal law, Settling Defendants shall make available to the

Trustees, or their representatives, within 30 days of a written request by the Trustees, copies of any

records, documents, data or information, whether in written or electronic form, maintained by or in

the possession of Settling Defendants, their contractors, agents or representatives, which relate to

any work or activity undertaken in implementing any portion of the Restoration Project that is

reasonably requested  by the Trustees or their representatives under this Decree.

49.     Any record, document, data and other information that Settling Defendants are

required by this Consent Decree to provide directly to the Trustees, or their representatives, shall

be considered a public record and shall not be withheld or protected from release. No claim of

privilege or confidentiality shall be made with respect to any sampling, analytical, monitoring,

hydrologic, hydrogeologic, scientific, chemical, or engineering data generated through any work or

activity undertaken in implementing any portion of the Restoration Project pursuant to this

Consent Decree.  Such non-privileged records, documents, data and other information includes

those used in surveying, design, construction, analysis of data, chain of custody records, receipts,

final reports, correspondence, or other records or materials related to the Restoration Project.

50.    a.    Except as provided in Paragraph 49 above, Settling Defendants may assert that

certain records, documents or other information provided to the Trustees include or constitute

confidential business information that is subject to legal protection under federal or state law

("CBI").  Whenever Settling Defendants submit a record, document or other information to the

Trustees which Settling Defendants assert includes or constitutes CBI, Settling Defendants shall

identify the record, document or information, or portion thereof, which is asserted to be CBI with

particularity and demonstrate a proper basis in fact and law why the information is considered to

be CBI. Records, documents or information, or portions thereof, that the Trustees determine to be

CBI  under applicable federal or state laws or regulations will be protected from further release to

the extent and in the manner afforded by such laws.  If CBI is not identified by Settling Defendants

at the time a record, document or information is submitted to the Trustees, or if the Trustees notify

Settling Defendants that the record, document or information is not determined to be CBI under

applicable federal or state laws or regulations, the public may be given access to such documents

or information without further notice to Settling Defendants.

b.    In the event the Settling Defendants believe that information, data, or other

material accessible to the Trustees and/or their representatives under this Consent Decree is

privileged, the Settling Defendants may assert that claim by providing to the Trustees within thirty

(30) days after the request the following information for each item as to which a privilege is

claimed:

(I)   A description of the information, data, or other material which contains sufficient information to allow the District Court to determine whether the claimed privilege applies. If the material at issue is a document, the Settling Defendants shall, at a minimum, provide the following information in as much detail as possible without revealing any information claimed privileged:  (1) the title of the document; (2) the date of the document; (3) the name and title of the author of the document; (4) the name and title of each addressee and recipient; and (5) a description of the contents of the document; and

(ii)   A statement of the specific privilege(s) claimed and the basis for the claim.  If the Settling Defendants fail without good cause to timely provide the information required by this Subparagraph, it waives any claim of privilege with respect to the specific information, data, or other material for which it failed to timely provide the information.  If the Trustees object to the Settling Defendants' claim that the information, data, or other material is privileged, Plaintiff(s)  may file a motion with the Court to compel access to the material.

51.    Settling Defendants' employees, contractors, agents, or representatives with knowledge of facts relating to the performance of any work or activity undertaken to implement the Restoration Project  under this Consent Decree shall be available to provide information to the Trustees, including their representatives under this Decree, with regard to any investigation,

42

information gathering, dispute resolution or other proceeding concerning the Restoration Project performed under this Consent Decree.

## XVI. <u>NOTICE</u>

52.     Whenever, under the terms of this Consent Decree, a notice, report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses set forth in Appendix B, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States and the State, and the Settling Defendants, respectively.

## XVII. <u>MODIFICATION</u>

53.     <u>Material Modifications</u>:  Any modification to this Consent Decree that materially alters the Restoration Project or any other requirements set forth herein requires the written approval of the Parties and the Court.  A modification to the Restoration Project is material if it is potentially inconsistent with the requirements specified in Appendix A.

54.     <u>Modifications That Are Not Material</u>:  Any modification to the Consent Decree that does not materially alter the Restoration Project or any other requirement set forth herein may be made by written agreement between the Parties.

43

## XVIII. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

55.     The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree are subject to a thirty day (30) period for public notice and comment in accordance with U.S. Department of Justice policy.   The Parties agree and acknowledge that final approval by the State and entry of this Consent Decree are subject to a forty-five day (45) period for public notice and comment. Each Plaintiff reserves the right to withdraw or withhold its consent to entry of this Decree if comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate.

56.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

57.     The Settling Defendants consent to the entry of this Consent Decree without further notice.

## XIX. <u>EFFECTIVE DATE AND RETENTION OF JURISDICTION</u>

58.     This Consent Decree and the Consent Decree for Removal Action and Recovery of Response Costs filed contemporaneously will each be effective only upon the approval and entry of both decrees by the Court. Accordingly, the effective date of this Consent Decree (the "Effective Date") shall be the date upon the occurrence of the later of (a) the date upon which this Consent Decree is entered by the Court, or (b) the date upon which the Removal Action and Recovery of Response Costs Consent Decree is entered by the Court.

59.  This Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of modifying or enforcing the terms and conditions of this Consent Decree, and to resolve disputes arising hereunder as may be necessary or appropriate for the construction, execution or enforcement of this Consent Decree in accordance with Section X (Dispute Resolution).

## XX.  TERMINATION

60.  Upon thirty days prior notice to all Parties, any Party may apply to the Court to terminate this Consent Decree after the Project Completion Certificate is issued pursuant to the Restoration Implementation Plan and Settling Defendants have fulfilled their obligations under Section VII (Payment of Past Assessment Costs and Future Costs) and Section XI (Stipulated Penalties).  Termination of this Consent Decree shall not affect the covenants, reservations, and effects of settlement set forth in Section XII (Covenants Not to Sue by the Plaintiffs); Section XIII (Covenants Not to Sue by Settling Defendants); and Section XIV (Effect of Settlement and Contribution Protection).

## XXI.  APPENDICES

61.  The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Restoration Implementation Plan.

"Appendix B" is the list of persons and addresses for Notices (Section XVI).

45

"Appendix C" is a map generally depicting the Calcasieu Estuary Superfund Site.

"Appendix D" is the Administrative Record Index for the Final DARP.

"Appendix E" is the Special Use Permit issued by the Sabine National Wildlife Refuge.


## XXII.  SIGNATORIES/SERVICE

62.     Each undersigned representative of the Settling Defendants to this Consent Decree, of the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and of LDEQ and LDWF certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

63.     Each Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or the State has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

64.     Each Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to the service of the Complaint, Consent Decree, and any related filings with the Court.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that Settling Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

65.   This Consent Decree may be executed in any number of counterparts and, as executed, shall constitute one agreement, binding on all of the Parties hereto, even though all of the Parties do not sign the original or the same counterpart.

## XXIII.  **FINAL JUDGMENT**

66.   This Consent Decree and its appendices constitute the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and the Settling Defendants.  The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

**SO ORDERED** THIS  19  DAY OF  April , 2010.

UNITED STATES DISTRICT JUDGE

47

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

FOR THE UNITED STATES OF AMERICA:

7/29/10
Date

Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.

9/30/2010
Date

Kenneth G. Long
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
202-514-2840
Kenneth.long@usdoj.gov

48

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

Stephanie A. Finley
United States Attorney
Western District of Louisiana


s/ Katherine W. Vincent
Katherine W. Vincent (#18717)
Assistant United States Attorney
Western District of Louisiana
U.S. Department of Justice
United States Attorney's Office
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

FOR LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:

6/21/2010
Date

Peggy M. Hatch
Secretary
Louisiana Department of Environmental Quality

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

FOR LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES:

09/19/2010
Date

Robert J. Barham
Secretary
Louisiana Department of Wildlife and Fisheries

51

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.


**FOR CONOCOPHILLIPS COMPANY**


May 12. 2010

Date

DA Herman

Robert A. Herman
Vice President, Health Safety & Environment
ConocoPhillips Company
600 N. Dairy Ashford
Houston, Texas 77079


Agent Authorized to Accept Service on Behalf of COP:

Thomas A. Campbell
Counsel for ConocoPhillips Company
Pillsbury Winthrop Shaw Pittman LLP
909 Fannin Street, Suite 2000
Houston, TX 77010
(713) 276-7676 (Phone)
(713) 276-7673 (Fax)
tom.campbell@pillsburylaw.com

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

**FOR SASOL NORTH AMERICA INC.**

April 22, 2010
Date

Michael S. Thomas
President
Sasol North America, Inc.
900 Threadneedle, Suite 100
Houston, Texas 77079

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:

Title:
Address:

Kyle Beall
Counsel for Sasol North America
Kean Miller LLP
18th Floor, One American Place
P.O. Box 3513
Baton Rouge, LA 70821
phone: (225)382-3493
fax:    (225)388-9133
e-mail:  kyle.beall@keanmiller.com

53

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.


**FOR SASOL NORTH AMERICA INC.**


_____              _____
Date                            Michael S. Thomas
                                President
                                Sasol North America, Inc.
                                900 Threadneedle, Suite 100
                                Houston, Texas 77079


Agent Authorized to Accept Service on Behalf of Above-signed Party:

       Name:        *Kyle Beall*
                     Kyle Beall
       Title:        Counsel for Sasol North America
       Address:      Kean Miller LLP
                     18th Floor, One American Place
                     P.O. Box 3513
                     Baton Rouge, LA 70821
                     phone: (225)382-3493
                     fax:    (225)388-9133
                     e-mail:  kyle.beall@keanmiller.com