RECEIVED
IN LAKE CHARLES, LA

MAY - 2 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and STATE OF LOUISIANA | |
| Plaintiffs, | CIVIL ACTION NO. 10-cv-1556 |
| v. | JUDGE |
| CONOCOPHILLIPS COMPANY and SASOL NORTH AMERICA INC., | MAGISTRATE JUDGE |
| Defendants. | |

## CONSENT DECREE FOR REMOVAL ACTION AND RECOVERY OF RESPONSE COSTS

# TABLE OF CONTENTS

I.      BACKGROUND ............................................................................ 4

II.     JURISDICTION AND VENUE ................................................... 9

III.    PARTIES BOUND ..................................................................... 10

IV.     DEFINITIONS ............................................................................ 10

V.      GENERAL PROVISIONS .......................................................... 18

VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS ..................... 21

VII.    QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ......................... 27

VIII.   ACCESS AND INSTITUTIONAL CONTROLS ...................... 30

IX.     REPORTING REQUIREMENTS ............................................. 33

X.      EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ............................. 35

XI.     PROJECT COORDINATORS ................................................... 38

XII.    PERFORMANCE GUARANTEE ............................................. 39

XIII.   CERTIFICATION OF COMPLETION ................................... 45

XIV.    EMERGENCY RESPONSE ....................................................... 50

XV.     PAYMENTS FOR RESPONSE COSTS ................................... 51

XVI.    INDEMNIFICATION AND INSURANCE .............................. 55

XVII.   FORCE MAJEURE .................................................................... 58

XVIII.  DISPUTE RESOLUTION ......................................................... 60

XIX.    STIPULATED PENALTIES ...................................................... 64

XX.     COVENANTS NOT TO SUE BY THE UNITED STATES ...................... 70

XXI.    COVENANTS NOT TO SUE BY THE STATE ....................... 76

XXII.   COVENANTS BY SETTLING DEFENDANTS ..................... 79

XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ............ 81

XXIV.   ACCESS TO INFORMATION .................................................. 83

XXV.    RETENTION OF RECORDS .................................................... 85

XXVI.   NOTICES AND SUBMISSIONS ............................................. 86

XXVII.  EFFECTIVE DATE .................................................................... 90

XXVIII. RETENTION OF JURISDICTION ......................................... 89

XXVIX.  APPENDICES ............................................................................ 89

XXX.    COMMUNITY RELATIONS ................................................... 90

XXXI.    MODIFICATION .................................................................................... 90
XXXII.   TERMINATION ..................................................................................... 91
XXXIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .............................. 91
XXXIV.  SIGNATORIES/SERVICE.......................................................................... 92
XXXV.   FINAL JUDGMENT ................................................................................ 93

This Consent Decree is made and entered into by and among Plaintiff, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency ("EPA"), the State of Louisiana, and Settling Defendants ConocoPhillips Company and Sasol North America Inc. (collectively the "Settling Defendants").

## I. BACKGROUND

A.      Contemporaneously with the lodging of this Consent Decree, the United States, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), the United States Department of the Interior, acting through the United States Fish and Wildlife Service ("DOI/USFWS"), and the National Oceanic and Atmospheric Administration ("NOAA") of the United States Department of Commerce, and the State of Louisiana (State), on behalf of the Louisiana Department of Wildlife and Fisheries ("LDWF") and the Louisiana Department of Environmental Quality ("LDEQ"), have filed a Complaint in this matter against Settling Defendants pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607; Section 311(f) of the Federal Water Pollution Control Act (also known as the Clean Water Act or "CWA"), 33 U.S.C. § 1321(f); and the Louisiana Environmental Quality Act, La. R.S. 30:2001 *et seq.*

B.      In the Complaint, the United States and State of Louisiana seek, *inter alia*: (1) reimbursement of costs incurred by United States for response actions at the Calcasieu Estuary Superfund Site in Calcasieu Parish, Louisiana (hereinafter the "Site" or the "Calcasieu Estuary Site"), together with accrued interest; (2) performance of response actions at the Bayou Verdine Area of Concern ("BVAOC") by Settling Defendants consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP"); and (3) recovery of damages for the injury to, destruction of, or loss of natural resources, pursuant to Section 311(f) of the CWA, 42 U.S.C.

1321(f), under the trusteeship of the federal and state natural resource trustee agencies

which include the National Oceanic and Atmospheric Administration ("NOAA") of the U.S.

Department of Commerce, the U.S. Department of Interior, acting through the U.S. Fish and

Wildlife Service ("DOI/USFWS"), LDEQ, Louisiana Department of Wildlife and Fisheries

("LDWF"), and the Louisiana Department of Natural Resources ("LDNR") (collectively referred

to as the "Trustees").

      C.     In the Complaint, the United States and State of Louisiana assert, *inter alia*, that

Defendants, or their legal predecessors in interest, discharged and disposed of hazardous

substances, into Bayou Verdine from their refining and petrochemical facilities and that such

hazardous substances were released into the environment and have caused the incurrence of

response costs by the United States and State of Louisiana and injury to, loss of and destruction

of natural resources in the Calcasieu Estuary.

      D.     EPA notified the State of Louisiana (the "State") in 2006 of negotiations with

potentially responsible parties regarding the reimbursement of costs and the implementation of

the Non-Time Critical Removal Action for the BVAOC, and EPA has provided the State with an

opportunity to participate in such negotiations and be a party to this Consent Decree.

      E.     EPA notified the DOI/USFWS and the NOAA in or before 1997 of negotiations

with potentially responsible parties regarding the release of hazardous substances that may have

resulted in injury to the natural resources under Federal trusteeship and encouraged the trustees

to participate in the negotiation of this Consent Decree. DOI and NOAA and the State Trustees

have asserted claims for injury to resources under their trusteeship and have negotiated a

settlement of those claims the terms of which are set forth in a separate consent decree lodged

contemporaneously with the lodging of this Consent Decree (the "NRD Consent Decree"). The NRD Consent Decree is incorporated by reference into this Decree for all purposes.

F.     The Defendants ("Settling Defendants") that have entered into this Consent Decree do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that any release or threatened release of hazardous substances at or from their facilities constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Defendants do not admit and retain the right to controvert any of the factual or legal statements or determinations made herein in any judicial or administrative proceeding except in an action to enforce this Consent Decree.

G.     EPA has not placed, nor has EPA proposed to list, the Calcasieu Estuary Superfund Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B.

H.     The BVAOC is located southwest of the city of Westlake and slightly northwest of the city of Lake Charles, Louisiana in Calcasieu Parish. The land around Bayou Verdine includes undeveloped, rural residential, commercial, and heavy industrial property. Heavy industry dominates the southern reaches of Bayou Verdine on both sides. Bayou Verdine is the recipient of discharges pursuant to National Pollutant Discharge Elimination System (NPDES) permits. These discharges have included outfalls belonging to the Settling Defendants, and others. In addition, three drainage ditches, including the West Ditch, the Faubacher Ditch, and the Kansas City Southern Railroad West Ditch drain into Bayou Verdine. Bayou Verdine's headwaters originate in a predominantly agricultural/urban area just north of Mossville,

6

Louisiana and flow in a generally south-southeast direction through a relatively industrialized area before entering the Calcasieu River at Coon Island Loop.

I.      On March 31, 1999, EPA commenced a Remedial Investigation for portions of the Site pursuant to 40 C.F.R. § 300.430. Concurrent with the EPA investigation, the Settling Defendants performed additional, supplementary investigations and assessments of the conditions in the BVAOC. These investigations are reported in: Calcasieu Estuary Remedial Investigation/ Feasibility Study (RI/FS): Baseline Ecological Risk Assessment (BERA), EPA 2003; *Bayou Verdine Investigation, Volume I: Nature and Extent Investigation* (Entrix, October 1999), *Bayou Verdine Investigation, Volume II: Screening Level Ecological Risk Assessment* (Entrix, November 1999), *Bayou Verdine Investigation, Volume III: Baseline Ecological Risk Assessment* (Entrix, March 2001) and *Bayou Verdine Investigation, Volume IV: Baseline Human Health Risk Assessment* (Entrix, April 2001). These investigations found the following hazardous substances, among others, in the sediments of Bayou Verdine and areas within Coon Island Loop, an adjacent portion of the Calcasieu River: arsenic, polynuclear-aromatic hydrocarbon ("PAH") compounds, zinc, copper, and chromium. The investigations found the following hazardous substances, among others, in the surface water of Bayou Verdine and areas within Coon Island Loop, an adjacent portion of the Calcasieu River: 1,1,2-trichloroethane, 1,2-dichloroethane ("EDC"), vinyl chloride, and zinc. The investigations found the following hazardous substances, among others, in biota in Bayou Verdine and areas within Coon Island Loop, an adjacent portion of the Calcasieu River: arsenic, EDC, PAH compounds, mercury, and zinc.

J.      Based on data compiled from EPA's and the Settling Defendants' investigations and pursuant to a negotiated Administrative Order on Consent ("AOC") for an Engineering

Evaluation and Cost Analysis ("EE/CA") for the BVAOC, dated February 15, 2002, Settling

Defendants conducted an EE/CA for the BVAOC. Pursuant to 40 C.F.R. 300.415(n)(4) and 40

C.F.R. 820, EPA published notice of the availability and brief description of the administrative

record and the EE/CA on May 20, 2003, in a major local newspaper of general circulation. EPA

provided an opportunity for written and oral comments from the public on the selection of the

removal action. A copy of the transcript of the public meeting is available to the public as part of

the administrative record upon which the Regional Administrator based the selection of the

response action.

  K. Following the issuance of the AOC for the EE/CA, elevated concentrations of

EDC were further delineated in the sediments of the West Ditch Area. On July 2, 2002, EPA

issued an Action Memorandum for the West Ditch Area as a result of the EDC contamination

there. Pursuant to a negotiated AOC for Removal Action dated October 22, 2002 (the "West

Ditch AOC"), Settling Defendants agreed to perform a time-critical removal action at the West

Ditch Area of BVAOC to remove the sediment containing the elevated EDC concentrations.

This action was completed in February 2004. This Consent Decree serves to terminate the West

Ditch AOC, with the exception of the record retention requirements of the AOC, pursuant to

Section XXXI of that AOC.

  M. EPA also determined the need to perform a Non-Time Critical Removal Action in

the Main Channel of the BVAOC. The decision by EPA on the Main Channel Non-Time

Critical Removal Action in the BVAOC is embodied in an Action Memorandum, executed on

August 6, 2003, on which the State, after a reasonable opportunity to review and comment has

given its concurrence. The Action Memorandum includes a responsiveness summary to the

public comments. The Non-Time Critical Removal Action includes, *inter alia*, removal of

contaminated sediments in discrete areas of the BVAOC, upland on-site containment of the removed sediments, and monitored natural recovery.

N.     Based on the information presently available to EPA and the State, EPA and the State believe that the Non-Time Critical Removal Action will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

O.     Solely for the purposes of Section 113(j) of CERCLA, the Non-Time Critical Removal Action selected pursuant to the EE/CA and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

P.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the remediation of the BVAOC and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. §§ 9606, 9607, and 9613(b), and Section 311(e)(2) of the CWA, 33 U.S.C. § 1321(e)(2). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the

Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    Settling Defendants shall provide a copy of this Consent Decree to their contractors and representatives performing the Work (as defined below) required by this Consent Decree and shall condition all contracts entered into hereunder upon performance of the BVAOC Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.    DEFINITIONS

4.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Action Memorandum" shall mean the EPA Action Memorandum relating to the BVAOC within the Site signed on August 6, 2003, by the Superfund Division Director, EPA Region 6, and all attachments thereto. The Action Memorandum is attached as Appendix A.

"Bayou Verdine Area of Concern" or "BVAOC" shall generally mean the discrete portion of the Bayou Verdine channel extending upstream 2.8 miles from its mouth, together with its tributaries and each of their associated surface water, sediments, soil, biota, adjoining shoreline and banks, riparian habitats and wetlands, and includes the ponds adjacent to New Trousdale Road. The 2.8 mile Bayou Verdine channel was subdivided into four spatially distinct reaches extending from 0.5 miles upstream of the ConocoPhillips facility to Coon Island Loop. Bayou Verdine is a surface water body situated in Calcasieu Parish, Louisiana within the Calcasieu Estuary Site. The BVAOC is depicted in Appendix C and incorporated herein by reference.

"Calcasieu Estuary Superfund Site" shall mean the aerial extent of contamination within the areas encompassing Bayou Verdine, Bayou d' Inde, Coon Island Loop, Clooney Island Loop, Prien Lake, Lake Charles, and the Calcasieu River from the saltwater barrier to Moss Lake. Within these areas, the Calcasieu Estuary Site includes the surface water, tributaries, biota, sediment, soils, adjoining shoreline and banks, riparian habitats, and related wetlands, and depicted generally on the map attached as Appendix C. For clarification, the Calcasieu Estuary Superfund Site does not include any area of the Community of Mossville which is situated outside the approximate limits of the Site as generally depicted on Appendix C.

11

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"CWA" shall mean the Clean Water Act or Federal Water Pollution Control Act, as amended, 33 U.S.C. § 1251 *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto. In the event of conflict between this Decree and any appendix, this Decree shall control.

"Construction Completion" shall mean the completion of any necessary physical construction for the Non-Time Critical Removal Action as identified in the SOW.

"Day" shall mean a calendar day unless expressly stated to be a business or working day. "Business or Working day" shall mean a day other than a Saturday, Sunday, or Federal or State of Louisiana holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal or State of Louisiana holiday, the period shall run until the close of business of the next business or working day.

"Engineering Evaluation and Cost Analysis" or "EE/CA", shall mean the engineering evaluation and cost analysis set forth in a report dated July 22, 2002, which Settling Defendants prepared for BVAOC.

"Effective Date" shall be the effective date of this Consent Decree as provided in Section XXVII, Paragraph 105.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs incurred after December 31, 2009 including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, VIII (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XIV, and Paragraph 85 of Section XX (Work Takeover). Future Response Costs shall also include all Interim Response Costs and Interest on those Past Response Costs Settling Defendants have agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from December 31, 2009 to the date of payment under this Consent Decree.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Site between December 31, 2009 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"LDEQ" shall mean the Louisiana Department of Environmental Quality ("LDEQ") of the State of Louisiana and any successor departments or agencies of the State.

13

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Natural Resource Damages Consent Decree" or "NRD Consent Decree" shall mean the consent decree executed concurrently with this Consent Decree and entitled "Consent Decree for Natural Resource Damages" that settles all civil and administrative claims by the Trustees for injuries to natural resources in the Calcasieu Estuary that are under the trusteeship of the federal and state natural resource trustees related to past discharges or disposals of hazardous substances into Bayou Verdine or the Calcasieu Estuary from Settling Defendants' facilities, as set forth in that document.

"Non-Time Critical Removal Action" or "Removal Action" shall mean those activities, including preconstruction activities, design, remedial construction, monitoring, certification and Operation and Maintenance, if any, to be undertaken by the Settling Defendants to implement the Action Memorandum for the BVAOC in accordance with the SOW and the final Removal Action Work Plan and other plans approved by EPA.

"Operation and Maintenance" or "O & M" shall mean any activities that may be required to maintain the effectiveness of the Non-Time Critical Removal Action pursuant to this Consent Decree and the Statement of Work (SOW).

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Louisiana, and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through December 31, 2009, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the requirements and other measures of achievement of the goals of the Removal Action, set forth in the Action Memorandum and the SOW.

"Plaintiffs" shall mean the United States and the State of Louisiana.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Removal Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree for the Non-Time Critical Removal Action for Bayou Verdine and approved by EPA, and any amendments thereto.

"Removal Action Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Non-Time Critical Removal Action pursuant to the Removal Action Work Plan.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean ConocoPhillips Company and Sasol North America Inc., and shall include their predecessors, successors and assigns only to the extent the liability of such predecessor, successor or assign arises out of the same activities relating to the Site that

gave rise to the alleged liability of their respective Settling Defendant that forms the basis for the claims in the Complaint against Defendants.

"Site" shall mean the Calcasieu Estuary Superfund Site.

"State" shall mean the State of Louisiana and its political subdivisions, departments and agencies.

"State Future Response Costs" shall mean all costs incurred after December 31, 2009, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, VIII (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XIV, and Paragraph 85 of Section XX (Work Takeover).

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Non-Time Critical Removal Action and Operation and Maintenance, if any, at the BVAOC as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Supervising Contractor Qualifications Package" shall mean the written materials submitted to the U.S. EPA by the Settling Defendants that provide the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. "Solid Waste Management Units 7 and 9" ("SWMU") shall mean: SWMU 7 is the area around the former Pickett Thickener as generally depicted on Exhibit 6 to the SOW, which is attached hereto and incorporated by reference for all purposes. The Pickett Thickener, an above ground steel tank, was formerly a component of the wastewater treatment system. SWMU 9 is the area around the West Pond as generally depicted on Exhibit 6 to the SOW, which is attached hereto and incorporated by reference for all purposes. The West Pond was formerly a sludge settling lagoon.

"Trousdale Road Ponds" shall mean the 2 ponds adjacent to New Trousdale Road as generally depicted on Exhibit 5 to the SOW.

"Trustees" shall mean the National Oceanic and Atmospheric Administration ("NOAA") of the U.S. Department of Commerce, the U.S. Department of Interior, acting through the U.S. Fish and Wildlife Service ("DOI/USFWS"), the LDEQ, Louisiana Department of Wildlife and Fisheries ("LDWF"), and the Louisiana Department of Natural Resources ("LDNR").

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); [(3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under [insert appropriate State statutory citation].

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree as set forth in Section VI, except those required by Section XXV (Retention of Records).

## V. GENERAL PROVISIONS

5.   Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare and the environment at the BVAOC by the design and implementation of the Non-Time Critical Removal Action at the Site by the Settling Defendants, to reimburse Past Response Costs and Future Response Costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendants as provided in this Consent Decree.

6.   Commitments by Settling Defendants.

a.   Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the Action Memorandum, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.

b.   Settling Defendants shall also reimburse the United States for Past Response Costs and Future Response Costs, and shall reimburse the State for State Future Response Costs, as provided in this Consent Decree.

c.   The obligations of Settling Defendants to finance and perform the Work and to pay amounts owed the United States and the State under this Consent Decree are joint and several. However, any actions taken by one of the Settling Defendants in fulfillment of the

obligations specified in this Consent Decree shall be deemed to be an action jointly taken by both Settling Defendants. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

7.     Compliance With Applicable Law. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the EE/CA, the Action Memorandum and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.     Permits.

a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). For the purposes of this Paragraph, "on-site" shall mean the geographical area encompassed within the boundary limits of the BVAOC, as graphically illustrated in Appendix C. Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     The Settling Defendants may seek relief under the provisions of Section XVII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

9.     Notice to Successors-in-Title.

a.     With respect to any property owned or controlled by the Settling Defendants that is located within the BVAOC, within 45 days after the entry of this Consent Decree, the Settling Defendants shall submit to EPA for review and approval a notice to be filed with the Recorder of Conveyances in Calcasieu Parish, State of Louisiana, which shall provide notice to all successors-in-title that the property is part of the BVAOC, that EPA selected a Non-Time Critical Removal Action for the BVAOC on August 6, 2003, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the Non-Time Critical Removal Action. Such notice(s) shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. The Settling Defendants shall record the notice(s) within 30 days of EPA's approval of the notice(s). The Settling Defendants shall provide EPA with a certified copy of the recorded notice(s) within 30 days of recording such notice(s).

b.     At least 30 days prior to the conveyance of any interest in property owned or controlled by Settling Defendants that is located within the BVAOC including, but not limited to, fee interests, leasehold interests, and mortgage interests, the Settling Defendant(s) conveying the interest shall give the grantee written notice of (i) this Consent Decree, (ii) any instrument by

which an interest in real property has been conveyed that confers a right of access to the BVAOC (hereinafter referred to as "access easements") pursuant to Section VIII (Access and Institutional Controls), and (iii) any instrument by which an interest in real property has been conveyed that confers a right to enforce restrictions on the use of such property (hereinafter referred to as "restrictive easements") pursuant to Section VIII (Access and Institutional Controls). At least 30 days prior to such conveyance, the Settling Defendant(s) conveying the interest shall also give written notice to EPA and the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree, access easements, and/or restrictive easements was given to the grantee.

       c.     In the event of any such conveyance, the Settling Defendants' obligations under this Consent Decree, including, but not limited to, its obligation to provide or secure access and institutional controls, as well as to abide by such institutional controls, pursuant to Section VIII (Access and Institutional Controls) of this Consent Decree, shall continue to be met by the Settling Defendants. In no event shall the conveyance release or otherwise affect the liability of the Settling Defendants to comply with all provisions of this Consent Decree, absent the prior written consent of EPA. If the United States approves, the grantee may perform some or all of the Work under this Consent Decree.

      VI.    <u>PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS</u>

    10.    <u>Selection of Supervising Contractor.</u>

       a.     All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Quality Assurance, Sampling and Data Analysis), and XIV (Emergency Response) of this Consent Decree shall be

under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA, after a reasonable opportunity for review and comment by the State. Within 20 days after the lodging of this Consent Decree, Settling Defendants shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor (the "Supervisor Contractor Package"). With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed within 45 days of receipt of the Supervising Contractor Package. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA and the State a list of contractors, including a Supervising Contractor Package for each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves

and an authorization to proceed with respect to any of the other contractors within 45 days of receipt of the Supervising Contractor Packages. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVII (Force Majeure) hereof.

11.     Removal Action. Settling Defendants shall conduct the Non-Time Critical Removal Action for the BVAOC by performing the Work in accordance with the terms of this Decree and the Statement of Work attached hereto as Appendix B, as detailed in an EPA-approved work plan.

a.     Within 180 days after the approval of the Supervising Contractor, as set forth above in Paragraph 10, or 60 days after the Effective Date, whichever is later, Settling Defendants shall submit to EPA and the State a work plan for the performance of the Non-Time Critical Removal Action at the Site ("Removal Action Work Plan"). The Removal Action Work Plan shall provide for design, construction and implementation of the Non-Time Critical Removal Action set forth in the Action Memorandum and in achievement of the Performance Standards. Upon its approval by EPA, the Removal Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Removal Action Work Plan, Settling Defendants shall submit to EPA and the State a Health and

23

Safety Plan for field activities required by the Removal Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.     The Removal Action Work Plan shall include the following:  (1) detailed schedule for completion of the Non-Time Critical Removal Action, (2) description of the tasks utilized to implement the removal action, (3) description of equipment required, (4) Quality Assurance Project Plan, (5) Regulatory Compliance Plan, (6) Stormwater Pollution Prevention Plan, (7) Waste Management Plan, (8) Contingency Plan, (9) Construction Quality Assurance/Quality Control Plan, (10) procedures and plans for the decontamination of equipment and the disposal of contaminated materials, (11) Security Plan, and (12) Health & Safety Plan.

c.     Upon approval of the Removal Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Defendants shall implement the activities required under the Removal Action Work Plan.  The Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Removal Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Non-Time Critical Removal Action activities at the BVAOC prior to approval of the Removal Action Work Plan.

12.     Post-Removal Plan.  In accordance with the SOW, Settling Defendants shall submit a post-removal plan for site control (the " Post-Removal Work Plan") consistent with Section 300.415(l) of the NCP and OSWER Directive No. 9360.2-02.  Upon EPA approval and

24

consistent with the schedule set forth in the Post-Removal Work Plan, Settling Defendants shall implement monitoring and site controls, and shall provide EPA with documentation of all post-removal site control arrangements.

13. The Settling Defendants shall continue to implement the Non-Time Critical Removal Action and any O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

14. Modification of the SOW or Related Work Plans.

a. If EPA determines that modification to the Work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the Non-Time Critical Removal Action set forth in the Action Memorandum, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the removal action selected in the Action Memorandum.

b. For the purposes of this Paragraph and Paragraph 15 only, the "scope of the Non-Time Critical Removal Action selected in the Action Memorandum" is the proposed action known as "Alternative MC-3 - Dredging and Onsite Consolidation" in Section V.A.1. of the Action Memorandum.

c. If Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XVIII (Dispute Resolution), Paragraph 65 (Record Review). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

15.    Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Removal Action Work Plan constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

16.    Off-Site Shipment of Waste Material

a.    Settling Defendants shall, prior to any off-Site shipment of Waste Material from the BVAOC to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1)    The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation.  The Settling Defendants shall notify the state in which the planned receiving

26

facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for the Non-Time Critical Removal Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.     Before shipping any hazardous substances, pollutants, or contaminants from the BVAOC to an off-site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the BVAOC to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

VII.    QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

17.    Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendants shall submit to EPA for approval, after a reasonable

opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and any applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited

under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

18. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Not less than 28 days in advance of the commencement of the BVAOC remedial construction activities, the Settling Defendants shall provide to EPA and the State a schedule for sample collection activity unless shorter notice is agreed to by EPA. If there is a deviation in the sampling schedule, the Settling Defendants shall notify EPA and the State as soon as practicable of the change. EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA and the State shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

19. Settling Defendants shall submit to EPA and the State electronic results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

20. Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

VIII.   <u>ACCESS AND INSTITUTIONAL CONTROLS</u>

21.     If the BVAOC, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.      commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the BVAOC, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the BVAOC;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 85 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents pursuant to this Consent Decree, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendants' compliance with this Consent Decree; and

(10)    Determining whether the Site or other property is being used in a manner (with the exception of pre-existing uses of Bayou Verdine for storm water drainage purposes) that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.     commencing on the date of lodging of this Consent Decree, refrain from using the BVAOC, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the Non-Time Critical Removal Action to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to prohibition on activities that disturb the cap over the Trousdale Ponds.

22.     If the Site, or any other property where access is needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 21(a) of this Consent Decree;

b.     an agreement, enforceable by the Settling Defendants and the United

States, to refrain from using the Site, or such other property, in any manner that would interfere

with or adversely affect the implementation, integrity, or protectiveness of the removal action

measures to be performed pursuant to this Consent Decree.

23.     For purposes of Paragraph 22 of this Consent Decree, "best efforts" includes the

payment of reasonable sums of money in consideration of access, access easements, land/water

use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien

or encumbrance. If any access or land/water use restriction agreements required by Paragraph 22

of this Consent Decree are not obtained within 90 days of the effective date of this Consent

Decree, Settling Defendants shall promptly notify the United States in writing, and shall include

in that notification a summary of the steps that Settling Defendants have taken to attempt to

comply with Paragraph 22 of this Consent Decree. The United States may, as it deems

appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in

the form of contractual agreements or in the form of easements running with the land, or in

obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall

reimburse the United States in accordance with the procedures in Section XV (Payments for

Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such

access, land/water use restrictions, and/or the release/subordination of prior liens or

encumbrances including, but not limited to, the cost of attorney time and the amount of monetary

consideration paid or just compensation.

24.     If EPA determines that land/water use restrictions in the form of state or local

laws, regulations, ordinances or other governmental controls are needed to implement the Non-

Time Critical Removal Action selected in the Action Memorandum, ensure the integrity and

protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and the State's efforts to secure such governmental controls.

25. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of its access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## IX. REPORTING REQUIREMENTS

26. In addition to any other requirement of this Consent Decree, Settling Defendants shall submit to EPA and the State electronic copies of written quarterly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous quarter; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous quarter; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous quarter; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next quarter and provide other information relating to the progress of construction; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous quarter and those to be undertaken in the

quarter. Settling Defendants shall submit these quarterly progress reports to EPA and the State by the fifteenth day following the close of each quarter, commencing with the quarter during which the Consent Decree becomes effective until EPA notifies the Settling Defendants pursuant to Paragraph 47.b of Section XIII (Certification of Completion). If requested by EPA or the State, Settling Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work.

27.     The Settling Defendants shall notify EPA of any change in the schedule described in the quarterly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

28.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Superfund Division, Emergency Response Section, Region 6, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304. Settling Defendants will also report the occurrence to the State, if required under the State of Louisiana's unauthorized discharge reporting requirements under the La. R.S. 30:2463 (notification and response for discharge of oil) , Louisiana Administrative Code, Chapter 39 (Notification

Regulations and Procedures for Unauthorized Discharges) and any other applicable state law or regulation.

29. Within 20 days of the onset of such an event, Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

30. Settling Defendants shall submit electronic copies of all plans, reports, and data required by the SOW, the Removal Action Work Plan, or any other approved plans to EPA and the State in accordance with the schedules set forth in such plans. Upon request by EPA Settling Defendants shall submit in paper form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

31. All reports and other documents submitted by Settling Defendants to EPA (other than the quarterly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants (digital signatures are permitted).

## X. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

32. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the

submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within seven (7) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

33.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 32(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XVIII (Dispute Resolution) with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 32(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XIX (Stipulated Penalties).

34.     <u>Resubmission of Plans.</u>

a.     Upon receipt of a notice of disapproval pursuant to Paragraph 32(d), Settling Defendants shall, within 20 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XIX, shall accrue during the 20-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 35 and 36.

b.      Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 32(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XIX (Stipulated Penalties).

35.      In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XVIII (Dispute Resolution).

36.      If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XVIII (Dispute Resolution) and Section XIX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XIX.

37.      All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent

Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XI.   PROJECT COORDINATORS

38.    Within 20 days of lodging this Consent Decree, Settling Defendants, the State and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a BVAOC representative for oversight of performance of daily operations during remedial activities.

39.    Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate

Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

40.     EPA's Project Coordinator and the Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis, either telephonically or in person, unless otherwise specified by EPA.

XII.     PERFORMANCE GUARANTEE

41.     In order to ensure the full and final completion of the Work, one or both Settling Defendant(s) shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $10,000,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.  A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.  A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e.  A demonstration by one or more Settling Defendants that either or both Settling Defendant(s) meet the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

f.  A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

42.  Settling Defendants have selected, and EPA has approved, as an initial Performance Guarantee a demonstration of satisfaction of financial test criteria pursuant to Paragraph 41(e) with respect to ConocoPhillips .

43.     If at any time during the effective period of this Consent Decree, one or both Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 41(e) or Paragraph 41(f) above, such Settling Defendant(s) shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (iii) the notification of EPA within ninety days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1).  For purposes of the Performance Guarantee methods specified in this Section XII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

44.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason,

Settling Defendant(s), within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 41 of this Consent Decree that satisfies all requirements set forth in this Section XII. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 46(b) of this Consent Decree. Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant(s) to complete the Work in strict accordance with the terms hereof.

45. The commencement of any Work Takeover pursuant to Paragraph 85 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraph 41(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 41(e), Settling Defendant(s) shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

46.     Modification of Amount and/or Form of Performance Guarantee.

     a.     Reduction of Amount of Performance Guarantee.  If Settling Defendant(s) believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 41 above, Settling Defendant(s) may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  Settling Defendant(s) shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 46(b) of this Consent Decree.  If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendant(s) of such decision in writing.  After receiving EPA's written acceptance, Settling Defendant(s) may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, Settling Defendant(s) may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 44 or 46(b) of this Consent Decree.

     b.     Change of Form of Performance Guarantee.

(1)     If, after entry of this Consent Decree, Settling Defendant(s) desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendant(s) may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 46(b) of this Consent Decree. Any decision made by EPA on a petition submitted under this subparagraph (b)(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant(s) pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Defendant(s) shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendant(s) shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree. EPA shall notify Settling Defendant(s) in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph. Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendant(s) shall execute and/or

otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Defendant(s) shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within thirty days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree and to the United States, and EPA and the State as specified in Section XXVI.

c.    Release of Performance Guarantee. If Settling Defendant(s) receive written notice from EPA in accordance with Paragraph 48 hereof that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendant(s) in writing, Settling Defendant(s) may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Defendant(s) shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph. In the event of a dispute, Settling Defendant(s) may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

## XIII.   CERTIFICATION OF COMPLETION

47.    Construction Completion of the Non-Time-Critical Removal Action.

a.    Within 90 days after Settling Defendants conclude that the physical construction of the Non-Time Critical Removal Action has been fully performed, Settling

Defendants shall schedule and conduct a pre-certification construction inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification construction inspection, the Settling Defendants still believe that the physical construction of the Non-Time Critical Removal Action has been fully performed and the Construction Performance Standards have been attained, they shall electronically submit a written report (Removal Action Construction Completion Report) requesting certification to EPA for approval, with a copy to the State, pursuant to Section X (EPA Approval of Plans and Other Submissions) within 60 days of the inspection. In the Removal Action Construction Completion Report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that physical construction of the Non-Time-Critical Removal Action has been completed in full satisfaction of the requirements of this Consent Decree. The Removal Action Construction Completion Report shall include as-built drawings signed and stamped by a professional engineer and shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the Removal Action Construction Completion Report, EPA, after reasonable opportunity to review and comment by the State, determines that the physical construction of Non-Time Critical Removal Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Construction Performance Standards have not been achieved, EPA will notify

Settling Defendants within 60 days of receipt of the Removal Action Construction Completion Report in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the physical construction of Non-Time Critical Removal Action and achieve the Construction Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the removal action selected in the Action Memorandum," as that term is defined in Paragraph 14.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

b. If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the physical construction of Non-Time Critical Removal Action has been performed in accordance with this Consent Decree and that the Construction Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants within 60 days of receipt of the Removal Action Construction Completion Report. This certification shall constitute the Certification of Construction Completion of the Non-Time-Critical Removal Action for purposes of this Consent Decree, including, but not limited to, Sections XX and XXI (Covenants Not to Sue by Plaintiffs). EPA's issuance of the Certification of Construction Completion of the Non-

Time-Critical Removal Action shall not affect any of Settling Defendants' other obligations under this Consent Decree.

48. Completion of the Non-Time-Critical Removal Action

a. Within 90 days after Settling Defendants conclude that the Non-Time Critical Removal Action has been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Non-Time Critical Removal Action has been fully performed and the Performance Standards have been attained, they shall electronically submit a written report (Removal Action Completion Report) requesting certification to EPA for approval, with a copy to the State, pursuant to Section X (EPA Approval of Plans and Other Submissions) within 60 days of the inspection. In the Removal Action Completion Report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Non-Time-Critical Removal Action has been completed in full satisfaction of the requirements of this Consent Decree. The Removal Action Completion Report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

b.      If, after completion of the pre-certification inspection and receipt and review of the Removal Action Completion Report, EPA, after reasonable opportunity to review and comment by the State, determines that the Non-Time Critical Removal Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants within 60 days of receipt of the Removal Action Completion Report in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Non-Time Critical Removal Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the removal action selected in the Action Memorandum," as that term is defined in Paragraph 4. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

c.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Non-Time Critical Removal Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants within 60 days of receipt of the Removal Action Completion Report. This certification shall constitute the Certification of Completion of the Non-Time-

Critical Removal Action for purposes of this Consent Decree, including, but not limited to, Sections XX and XXI (Covenants Not to Sue by Plaintiffs). EPA's issuance of the Certification of Completion of the Non-Time-Critical Removal Action shall not affect any of Settling Defendants' other obligations under this Consent Decree.

XIV.  EMERGENCY RESPONSE

49.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the BVAOC that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 50, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA Superfund Division, Emergency Response Branch, Region 6. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendants shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XV (Payments for Response Costs).

50.    Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, a) to take all appropriate action to protect

human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the BVAOC, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the BVAOC, subject to Sections XX and XXI (Covenants Not to Sue by Plaintiffs).

## XV.   PAYMENTS FOR RESPONSE COSTS

51.   Payments for Past Response Costs.

a.   Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $4,553, 547 in payment for Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") in accordance with current EFT procedures, referencing USAO File Number [to be provided upon filing of Complaint], EPA Site/Spill ID Number 06KH, and DOJ Case Number 90-11-2-1284. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Western District of Louisiana following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

b.   At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Cincinnati Finance Center, in accordance with Section XXVI (Notices and Submissions).

c.   The total amount to be paid by Setting Defendants pursuant to Subparagraph 51.a shall be deposited in the EPA Hazardous Substance Superfund.

52.    Payments for Future Response Costs.

a.      Within 30 days of the Effective Date Settling Defendants shall make a prepayment of $50,000 to EPA toward Future Response Costs (less any funds remaining in the Special Account created under the Administrative Order on Consent DKT06-2002-2758).   On a periodic basis the United States will send Settling Defendants a bill requiring payment that includes a Regionally-prepared cost summary, which includes direct and indirect costs incurred by EPA and its contractors, and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors, if any.  Settling Defendants shall make all payments within 60 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 53.  Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 06KH, and *DOJ Case Number 90-11-2-1284.  Settling Defendants shall send the check(s) to:*

US Environmental Protection Agency
Superfund Payments
Cincinnati Finance Center
P.O. Box 979076
St. Louis, MO 63197-9000

b.      At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Cincinnati Finance Center, in accordance with Section XXVI (Notices and Submissions).

c.      The total amount to be paid by Setting Defendants pursuant to Subparagraph 52.a shall be deposited in the Bayou Verdine Area of Concern/Calcasieu Estuary

Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Non-Time-Critical Removal Action for Bayou Verdine, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

        d.     Settling Defendants shall reimburse the State for all State Future Response Costs not inconsistent with the National Contingency Plan. On a periodic basis, the State will send Settling Defendants a bill requiring payment that includes a summary of direct and indirect costs incurred by the State and its contractors . Settling Defendants shall make all payments within 60 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 53. The Settling Defendants shall send a certified or cashier's check(s) to:

> Accountant Administrator
> Financial Services Division
> Office of Management and Finance
> Louisiana Department of Environmental Quality
> P.O. Box 4303
> Baton Rouge, LA 70821-4303

A copy of the check and transmittal letter shall be mailed to:

> Cost Recovery Officer
> Office of Environmental Assessment
> Remediation Services Division
> Louisiana Department of Environmental Quality
> P.O. Box 4314
> Baton Rouge, LA 70821-4314

    53.     Settling Defendants may contest payment of any Future Response Costs under Paragraph 52 if they determine that the United States or the State has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the

NCP. Such objection shall be made in writing within 60 days of receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 60 day period pay all uncontested Future Response Costs to the United States or the State in the manner described in Paragraph 52. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Louisiana and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), and the State a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XVIII (Dispute Resolution). If the United States or the State prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States or the State, if State costs are disputed, in the manner described in Paragraph 52. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States or the State, if State costs are disputed, in the manner described in Paragraph 52; Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in

conjunction with the procedures set forth in Section XVIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States and the State for their Future Response Costs.

54.     In the event that the payments required by Subparagraph 51.a are not made within 30 days of the Effective Date or the payments required by Paragraph 52 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs and State Past Response Costs under this Paragraph shall begin to accrue on the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIX "Stipulated Penalties". The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 52.

## XVI.    INDEMNIFICATION AND INSURANCE

55.    <u>Settling Defendants' Indemnification of the United States and the State.</u>

a.      The United States and the State do not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from,

or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling Defendants agree to pay the United States and the State all costs they incur including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

b. The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 55.a, and shall consult with Settling Defendants prior to settling such claim.

56. Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and the State

with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

57.     No later than 15 days before commencing any on-site Work, Settling Defendants shall secure, and shall maintain new comprehensive general liability insurance with limits of Ten (10) million dollars, combined single limit, and automobile liability insurance with limits of Two (2) million dollars, combined single limit, naming the United States and the State as additional insureds. In addition, for the duration of this Consent Decree, Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendants shall provide to EPA and the State certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendants demonstrate by evidence satisfactory to EPA and the State that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVII.  FORCE MAJEURE

58.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation.  The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

59.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund Division, EPA Region 6, within 48 hours of when Settling Defendants first knew that the event might cause a delay.  Within ten (10) business days thereafter, Settling Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or

contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known. In their unreviewable discretion, the United States and the State may elect to waive the requirements of this Paragraph.

60.    If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

61.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraph 58 and 59, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XVIII. DISPUTE RESOLUTION

62.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed pursuant to this Section.

63.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. Any party may initiate dispute resolution under this Section by sending a written notice of dispute to the other parties (the "Notice of Dispute"). The Notice of Dispute shall identify the issue in the dispute and the

disputing party's (ies') position on the issue. The dispute shall be considered to have arisen upon receipt of a written Notice of Dispute.

64.  Statements of Position.

a.  In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 65 or Paragraph 66.

b.  Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 65 or 66. Within 14 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

c.  If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 65 or 66, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the

Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 65 and 66, respectively.

65. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the Action Memorandum's provisions.

a. An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b. The Director of the Superfund Division, EPA Region 6, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 65.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 65c. and d.

c. Any final administrative decision made by EPA pursuant to Paragraph 65.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 15 days of

receipt of EPA's final decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendants' motion within thirty (30) days of receipt of the Motion or such greater time as the Court allows.

        d.    In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 65.a.

        66.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.    Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 64, the Director of the Superfund Division, EPA Region 6, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 15 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion within thirty (30 ) days of receipt of the Motion or such greater time as the Court allows.

b.      Notwithstanding Paragraph O of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

67.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 76. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. The Settling Defendants shall not be required to pay stipulated penalties if and to the extent that they prevail on the disputed issue(s). In the event that the Settling Defendants do not prevail on the disputed issue (s), stipulated penalties shall be assessed and paid as provided in Section XIX (Stipulated Penalties).

## XIX.   STIPULATED PENALTIES

68.     Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 69-71 to the United States and the State for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVII (Force Majeure). "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

69. <u>Stipulated Penalty Amounts - Cost Payments and Work</u>.

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 69.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

b.     <u>Compliance Milestones</u>.

(1)     Payment of Past Response Costs and Future Response Costs

(2)     Submission of Removal Action Work Plan

(3)     Completion of the Physical Construction for the Non-Time Critical Removal Action as set forth in the Removal Action Work Plan

(4)     Access and Institutional Controls

(5)     Post Removal Sampling and Monitoring as set forth in the SOW

70.     Stipulated Penalty Amounts - Reports.

a.     The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Paragraphs 26-31:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1,000 | 31st day and beyond |

71.     In the event that EPA assumes performance of a portion or all of the Work

pursuant to Paragraph 85 of Section XX (Covenants Not to Sue by the United States), Settling

Defendants shall be liable for a stipulated penalty in the amount of: $500,000 if EPA assumes

between 10% and 50% of the work and $1,000,000 if EPA assumes greater than 50% of the

Work. For purposes of this provision, the relevant percentage shall be determined based on the

estimated cost of EPA completing the Work it has assumed as compared to the present estimated

cost of $10,000,000.

72.     All penalties shall begin to accrue on the day after the complete performance is

due or the day a violation occurs, and shall continue to accrue through the final day of the

correction of the noncompliance or completion of the activity. However, stipulated penalties

shall not accrue: (1) with respect to a deficient submission under Section X (EPA Approval of

Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's

receipt of such submission until the date that EPA notifies Settling Defendants of any deficiency;

(2) with respect to a decision by the Director of the Superfund Division, EPA Region 6, under

Paragraph 64.b or 65.a of Section XVIII (Dispute Resolution), during the period, if any,

beginning on the 21st day after the date that Settling Defendants' reply to EPA's Statement of

Position is received until the date that the Director issues a final decision regarding such dispute;

or (3) with respect to judicial review by this Court of any dispute under Section XVIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

73.     Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendants written notification of the same and describe the noncompliance. EPA and the State may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation, and failure to notify does not constitute a waiver of the penalty claim.

74.     All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless Settling Defendants invoke the Dispute Resolution procedures under Section XVIII (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to:

> US Environmental Protection Agency
> Superfund Payments
> Cincinnatti Finance Center
> PO Box 979076
> St. Louis, MO 63197-9000

shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #06KH, the DOJ Case Number 90-11-2-1284, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions), and to

> Chief, Superfund Cost Recovery Section (6SF-TE)
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue
> Dallas, TX 75202

All payments to the State under this Section shall be paid by certified or cashier's check(s) made payable to "Department of Environmental Quality," and mailed to

> Accountant Administrator
> Financial Services Division
> Office of Management and Finance
> Louisiana Department of Environmental Quality
> P.O. Box 4303
> Baton Rouge, LA 70821-4303

A copy of the check and transmittal letter shall be mailed to:

> Cost Recovery Officer
> Office of Environmental Services
> Remediation Services Division
> Louisiana Department of Environmental Quality
> P.O. Box 4314
> Baton Rouge, LA 70821-4314

75.     The payment of penalties shall not alter in any way Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

76. Penalties shall continue to accrue as provided in Paragraph 67 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the State within 15 business days of the agreement or the receipt of EPA's decision or order;

b. If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA and the State within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph (c) below;

c. If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties, if any, determined by the District Court to be owing to the United States or the State into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the State or to Settling Defendants to the extent that they prevail.

77. If Settling Defendants fail to pay stipulated penalties when due, the United States or the State may institute proceedings to collect the penalties, as well as Interest. Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 73.

78. Except as provided in Section XX and XXI, nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the

State to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

79.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XX.   COVENANTS NOT TO SUE BY THE UNITED STATES

80.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraphs 81-84 of this Section, the United States covenants not to sue or to take civil administrative action against Settling Defendants pursuant to: Sections 106 and 107(a) of CERCLA for response costs or response actions at the Site; Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), with respect to hazardous substances that may have migrated into Bayou Verdine from Solid Waste Management Units 7 and 9 and hazardous substances that may have migrated into Bayou Verdine or groundwater from the Trousdale Road Ponds, to the extent such migration occurred  prior to submission of the Removal Action Construction Completion Report under Section XIII of this Consent Decree; and Section 311(f) of the CWA, 33 U.S.C. § 1321(f), for the costs of removal actions relating to the discharge of hazardous substances at the Site (excluding removal actions related to the discharge of oil under Section 311(f) and the costs or

expenses incurred in the assessment, restoration or replacement of natural resources damaged or destroyed as a result of a discharge of hazardous substances or oil that are recoverable under Section 311(f)(4) and (5)). Except with respect to future liability, these covenants not to sue shall take effect upon the receipt by EPA of the payments required by Paragraph 51.a of Section XV (Payments for Response Costs). With respect to future liability, these covenants not to sue shall take effect upon Certification of Construction Completion of Removal Action by EPA pursuant to Paragraph 47.b of Section XIII (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

81. United States' Pre-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants:

      a.     to perform further response actions relating to the Site, or

      b.     to reimburse the United States for additional costs of response if, prior to Certification of Construction Completion of the Removal Action:

      (1)     conditions at the Site, previously unknown to EPA, are discovered, or

      (2)     information, previously unknown to EPA, is received, in whole or in part, and (i) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Non-Time Critical Removal Action is not,

or will not be, protective of human health or the environment in the BVAOC; or (ii) EPA determines that new or additional contamination outside of the BVAOC of a type previously unknown by EPA, that is attributable to the Settling Defendants, indicates that additional response actions outside of the BVAOC may be required to protect human health or the environment at the Site.

82. United States' Post-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Settling Defendants

      a.     to perform further response actions relating to the Site or

      b.     to reimburse the United States for additional costs of response if, subsequent to Certification of Construction Completion of the Removal Action:

      (1)     conditions at the Site, previously unknown to EPA, are discovered, or

      (2)     information, previously unknown to EPA, is received, in whole or in part, and (i) EPA determines that these previously unknown conditions or this information together with other relevant information indicates that the Non-Time Critical Removal Action is not, or will not be, protective of human health or the environment in the BVAOC; or (ii) EPA determines that new or additional contamination outside of the BVAOC of a type previously unknown by EPA, that is attributable to the Settling Defendants, indicates that additional response actions outside of the BVAOC may be required to protect human health or the environment at the Site.

83.     For purposes of Paragraph 81, the information and the conditions known to EPA

shall include: (a) as to the BVAOC, only that information and those conditions known to EPA

(1) as of the date the Action Memorandum was signed and the administrative record supporting

the Action Memorandum was made available to the public, and (2) as described or recorded in

the investigations and studies identified in the Administrative Record for the Action

Memorandum, an index of which is attached as Appendix E, and (b) as to areas of the Site

outside of the BVAOC, that information and those conditions known by EPA as of the date of

the signing by the Parties of this Decree pertaining to areas of the Site outside of the BVAOC.

For purposes of Paragraph 82, the information and the conditions known to EPA shall include:

(a) as to the BVAOC, only that information and those conditions known to EPA as of the date of

Certification of Construction Completion of the Removal Action and set forth in the Action

Memorandum, the Administrative Record supporting the Action Memorandum, the post-Action

Memorandum administrative record, and any information received by EPA pursuant to the

requirements of this Consent Decree prior to Certification of Construction Completion of the

Removal Action, and (b) as to areas of the Site outside of the BVAOC only that information and

those conditions known to EPA as of the date of the Certification of Construction Completion of

the Removal Action and additional studies, investigations or information obtained or received by

EPA as of the date of the Certification of Construction Completion of the Removal Action.

84.     General Reservations of Rights. The United States reserves, and this Consent

Decree is without prejudice to, all rights against Settling Defendants with respect to all matters

not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other

provision of this Consent Decree, the United States reserves all rights against Settling

Defendants with respect to:

a.     claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the Action Memorandum, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

d.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments not otherwise resolved in the NRD Consent Decree filed contemporaneously with this Decree;

e.     criminal liability;

f.     liability for violations of federal or state law which occur during or after implementation of the Non-Time Critical Removal Action; and

g.     liability, prior to Certification of Completion of the Non-Time Critical Removal Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 14 (Modification of the SOW or Related Work Plans);

h.     liability for hazardous substances migrating into Bayou Verdine from Solid Waste Management Units 7 and 9 and hazardous substances migrating into Bayou Verdine

or ground water from the Trousdale Road Ponds, to the extent such migration occurred after submission of the Removal Action Construction Completion Report pursuant to Section XIII of this Consent Decree.

85.  Work Takeover.

a.  In the event EPA determines that Settling Defendants have (i) ceased implementation of any portion of the Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Work, or (iii) are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendants. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 15 business days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.  If, after expiration of the 15-day notice period specified in Paragraph 85(a), Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Defendants in writing (which writing may be via electronic mail or by facsimile) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 85(b).

c.  Settling Defendants may invoke the procedures set forth in Section XVIII (Dispute Resolution), Paragraph 66, to dispute EPA's implementation of a Work Takeover under Paragraph 85(b). However, notwithstanding Settling Defendants' invocation of such dispute

resolution procedures, and during the pendency of any such dispute, EPA may in its sole

discretion commence and continue a Work Takeover under Paragraph 85(b) until the earlier of

(i) the date that Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise

to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is

rendered in accordance with Section XVIII (Dispute Resolution), Paragraph 66, requiring EPA to

terminate such Work Takeover.

        d.      After commencement and for the duration of any Work Takeover, EPA

shall have immediate access to and benefit of any performance guarantee(s) provided pursuant to

Section XII of this Consent Decree, in accordance with the provisions of Paragraph 45 of that

Section. If and to the extent that EPA is unable to secure the resources guaranteed under any

such performance guarantee(s) and the Settling Defendant(s) fail to remit a cash amount up to

but not exceeding the estimated cost of the remaining Work to be performed, all in accordance

with the provisions of Paragraph 45, any unreimbursed costs incurred by EPA in performing

Work under the Work Takeover shall be considered Future Response Costs that Settling

Defendants shall pay pursuant to Section XV (Payments for Response Costs).

        86.     Notwithstanding any other provision of this Consent Decree, the United States

and the State retain all authority and reserve all rights to take any and all response actions

authorized by law.

## XXI.   COVENANTS NOT TO SUE BY THE STATE

        87.     In consideration of the actions that will be performed by the Settling Defendants

under the terms of the Consent Decree, and except as specifically provided in Paragraph 88 of

this Section, the State of Louisiana covenants not to sue or to take civil administrative action

against Settling Defendants pursuant to: Section 107(a) of CERCLA; Section 7003(a) of RCRA, 42 U.S.C. § 6973(a), with respect to hazardous substances that may have migrated into Bayou Verdine from Solid Waste Management Units 7 and 9 and hazardous substances that may have migrated into Bayou Verdine or groundwater from the Trousdale Road Ponds, to the extent such migration occurred prior to submission of the Removal Action Construction Completion Report under Section XIII of this Consent Decree; Section 311(f) of the CWA, 33 U.S.C. § 1321(f), for the costs of removal actions relating to the discharge of hazardous substances at the Site (excluding removal actions related to the discharge of oil under Section 311(f) and the costs or expenses incurred in the assessment, restoration or replacement of natural resources damaged or destroyed as a result of a discharge of hazardous substances or oil that are recoverable under Section 311(f)(4) and (5)); and the Louisiana Environmental Quality Act, La. R.S. 30:2001 *et seq*, the Louisiana Environmental Quality Act, La. R.S. 30:2025, the Louisiana Water Control Law, La. R.S. 30:2076.1, the Louisiana Hazardous Waste Control Law, La. R.S. 30:2204, and La. R.S. 30:2273 through 2276, or any other civil or common law for response costs or response actions relating to the Site. Except with respect to future liability, these covenants not to sue shall take effect upon the effective date of this Consent Decree. With respect to future liability, these covenants not to sue shall take effect upon Certification of Construction Completion of Removal Action by EPA pursuant to Paragraph 47(b) of Section XIII (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree. These covenants not to sue extend only to the Settling Defendants and do not extend to any other person or entity.

88. <u>Reservations of Rights.</u> The State of Louisiana reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not

expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the State of Louisiana reserves all rights against Settling Defendants with respect to:

a. claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the Action Memorandum, the BVAOC Work, or otherwise ordered by EPA or the State of Louisiana, after signature of this Consent Decree by the Settling Defendants;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments not otherwise resolved in the NRD Consent Decree;

e. criminal liability; and

f. liability for violations of federal or state law which occur during or after implementation of the Non-Time Critical Removal Action.

g. liability for hazardous substances migrating into Bayou Verdine from Solid Waste Management Units 7 and 9 and hazardous substances migrating into Bayou Verdine

or ground water from the Trousdale Road Ponds, to the extent such migration occurred after submission of the Removal Action Construction Completion Report pursuant to Section XIII of this Consent Decree.

## XXII. COVENANTS BY SETTLING DEFENDANTS

89. Covenant Not to Sue. Subject to the reservations in Paragraph 90, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Site or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b. any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

c. any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Louisiana Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Except as provided in Paragraph 92 (Waiver of Claims Against De Micromis Parties), and Paragraph 97 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 81-84 and 88, but only to the extent that

Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

90. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

91. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

92. Waiver of Claims Against De Micromis Parties. Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) against any person where the person's liability to Settling Defendants with

respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

      a.      the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

      b.      This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

93.      Except as provided in Paragraph 92 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 94 below, the preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Except as provided in Paragraph 92 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

94.     The Parties agree, and by entering this Consent Decree this Court finds, that the settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for matters addressed in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred by the United States, the State, or any other person with respect to hazardous substances at the Calcasieu Estuary Superfund Site.  The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

95.     The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

96.     The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the United States and the State within 10 business days of service of the complaint on them.  In addition, Settling Defendants shall notify the United States and the State within 10 business days of service or receipt of any Motion for Summary Judgment and within 10 business days of receipt of any order from a court setting a case for trial.

97.    In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants may contest any claims reserved by the United States and the State in this Consent Decree, and the Settling Defendants may claim any defense available to them, except that they shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Sections XX and XXI (Covenants Not to Sue by Plaintiffs).

## XXIV. ACCESS TO INFORMATION

98.    Settling Defendants shall provide to EPA and the State, within 30 days upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to the Non-Time Critical Removal Action or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

99.    Business Confidential and Privileged Documents.

a.      Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to the United States or the State under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendants.

b.      The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiffs with a privilege log containing the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

100.    No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

101.    Until 5 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 47.b of Section XIII (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the BVAOC, provided, however, that Settling Defendants who are potentially liable as owners or operators of the BVAOC must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

102.    At the conclusion of this document retention period, Settling Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, Settling Defendants shall

deliver any such records or documents to EPA or the State. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, they shall provide the Plaintiffs with a privilege log as required by Paragraph 94(b) above. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

103. Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. NOTICES AND SUBMISSIONS

104. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the

Consent Decree with respect to the United States, EPA, the State, and the Settling Defendants, respectively.

As to the United States:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C. 20044-7611
> Re: DJ # 90-11-2-1284/1

As to EPA:

> Valmichael Leos
> Remedial Project Manager
> United States Environmental Protection Agency
> Region 6, 6SF-LP
> 1445 Ross Avenue
> Dallas, TX 75202
>
> Cincinnati Finance Center
> Attention: Dana Sherrer
> 26 West Martin Luther King Drive
> M.S. Norwood
> Cincinnati, Ohio 45268

<u>As to the State:</u>

Administrator
Remediation Services Division (Re: AI #13462)
Department of Environmental Quality
P.O. Box 4314
Baton Rouge, LA 70821-4314

Executive Counsel (legal notices)
Legal Affairs Division
Department of Environmental Quality
P.O. Box 4302
Baton Rouge, LA 70821-4302

<u>As to the Settling Defendants:</u>

William Beck
Site Manager, Risk Management and
Remediation
ConocoPhillips Company
2200 Old Spanish Trail
Capital One Bank Building, Suite 700
Westlake, LA 70669

Joseph Ledvina
Manager, Special Projects
Sasol North America Inc.
900 Threadneedle, Suite 100
Houston, Texas 77079

Paul Hamada (legal notices)
Senior Counsel
ConocoPhillips Company
600 Dairy Ashford, McLean Building
Houston, Texas 77079-1175

Ann McWatters (legal notices)
Sasol North America Inc.
Vice President & General Counsel
900 Threadneedle, Suite 100
Houston, Texas 77079

## XXVII. EFFECTIVE DATE

105.    This Consent Decree and the NRD Consent Decree filed contemporaneously will each be effective only upon the approval and entry of both decrees by the Court. Accordingly, the effective date of this Consent Decree (the "Effective Date") shall be the date upon the occurrence of the later of (a) the date upon which this Consent Decree is entered by the Court, or (b) the date upon which the NRD Consent Decree is entered by the Court.

## XXVIII. RETENTION OF JURISDICTION

106.    This Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVIII (Dispute Resolution) hereof.

## XXIX. APPENDICES

107.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Action Memorandum.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Calcasieu Estuary Site.

"Appendix D" is the description and/or map of the BVAOC.

"Appendix E" is the Index to the BVAOC Administrative Record.

## XXX. COMMUNITY RELATIONS

108. Settling Defendants shall propose to EPA and the State their participation in the community relations plan to be developed by EPA. EPA will determine the appropriate role for the Settling Defendants under the Plan. Settling Defendants shall also cooperate with EPA and the State in providing information regarding the Work to the public. As requested by EPA or the State, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the State to explain activities at or relating to the Site.

## XXXI. MODIFICATION

109. Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants. All such modifications shall be made in writing.

110. Except as provided in Paragraph 14 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, the State, Settling Defendants, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification. Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected removal action within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by

written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

111.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII.    TERMINATION

112.    Upon thirty days prior notice to and agreement by all Parties, any Party may apply to the Court to terminate this Consent Decree after the Certification of Completion of the Non-Time-Critical Removal Action is issued pursuant to Section XIII and Settling Defendants have fulfilled their obligations under Section XV (Payments for Response Costs) and Section XIX (Stipulated Penalties).  Termination of this Consent Decree shall not affect the covenants, reservations, and effects of settlement set forth in Sections XX-XXIII.

## XXXIII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

113.    The Parties agree and acknowledge that final approval by the United States and entry of this Consent Decree are subject to a thirty day (30) period for public notice and comment in accordance with 28 C.F.R. § 50.7. and U.S. Department of Justice policy. Additionally, the Parties agree and acknowledge that final approval by Co-Plaintiff, the State of Louisiana, and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice of this Consent Decree in newspapers of general circulation and the official journals of the parishes in which the Site is located, an opportunity for public comment, and consideration of any comments. Plaintiffs reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or

considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

114.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIV.    SIGNATORIES/SERVICE

115.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the undersigned representative of the State, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

116.    Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

117.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXV.  FINAL JUDGMENT

118.  This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

119.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ___ DAY OF _____ 2010.


United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. ConocoPhillips Company, Inc. and Sasol North America, Inc.*, relating to the Calcasieu Estuary Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

7/29/10
Date

Ignacia S. Moreno
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

9/30/2010
Date

Kenneth G. Long
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
202-514-2840

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. ConocoPhillips Company and Sasol North America, Inc.*, relating to the Calcasieu Estuary Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

Stephanie A. Finley
United States Attorney
Western District of Louisiana


s/ Katherine W. Vincent
Katherine W. Vincent (#18717)
Assistant United States Attorney
Western District of Louisiana
U.S. Department of Justice
United States Attorney's Office
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. ConocoPhillips Company and Sasol North America, Inc.*, relating to the Calcasieu Estuary Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

7/12/2010
Date

Al Armendariz
Regional Administrator, Region 6
U.S. Environmental Protection Agency
1445 Ross Avenue
Dallas, TX 75202

May 10, 2010
Date

Edwin M. Quinones
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 6, 6RC-S
1445 Ross Avenue
Dallas, TX 75202

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. ConocoPhillips Company and Sasol North America, Inc.*, relating to the Calcasieu Estuary Superfund Site.


**FOR THE STATE OF LOUISIANA**

8/30/10
Date

James D. "Buddy" Caldwell
Attorney General
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70814

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.


**FOR CONOCOPHILLIPS COMPANY**


May 12. 2010

Date

RA Herman *per*

Robert A. Herman
Vice President, Health Safety & Environment
ConocoPhillips Company
600 N. Dairy Ashford
Houston, Texas 77079


Agent Authorized to Accept Service on Behalf of COP:

Derrick D. Vallance
Counsel for ConocoPhillips Company
Pillsbury Winthrop Shaw Pittman LLP
909 Fannin Street, Suite 2000
Houston, TX 77010
(713) 276-7617 (Phone)
(713) 276-7673 (Fax)
derrick.vallance@pillsburylaw.com

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States and the State of Louisiana v. ConocoPhillips Company and Sasol North America Inc.*, relating to the Calcasieu Estuary Superfund Site.

**FOR SASOL NORTH AMERICA INC.**

April 22, 2010
Date

Michael S. Thomas
President
Sasol North America Inc.
900 Threadneedle, Suite 100
Houston, Texas 77079

Agent Authorized to Accept Service on Behalf of Sasol:

Kyle Beall
Kean Miller LLP
18th Floor, One American Place
P. O. Box 3513
Baton Rouge, Louisiana 70821
225-382-3493
Fax 225-388-9133